The STATE of Ohio, Appellant,

v.

HENDERSON, Appellee.

[Cite as *State v. Henderson* (1990), 66 Ohio App.3d 447.]

Court of Appeals of Ohio,
Montgomery County.

No. 11531.

Decided March 13, 1990.

448

*Lee C. Falke,* Prosecuting Attorney, and *Carley J. Ingram,* for appellant.
*Christopher Conard,* for appellee.

FAIN, Judge.

The state of Ohio appeals from the trial court's suppression of evidence in this case. The state contends that defendant-appellee, Chedell Henderson, had no standing to challenge a search as being outside the scope of the warrant obtained, and, further, that there were exigent circumstances justifying a warrantless search.

We conclude that Henderson did have standing to challenge the search of his person as part of a warrantless search of premises in which he was present. We further conclude that there was evidence in this record from which the trial court could properly have concluded that the search was not justified by exigent circumstances. Accordingly, the judgment of the trial court will be affirmed.

## I

Detective Randall Warren of the Dayton Police Department obtained a warrant for the search of Apartment Nos. 1 and 3 at 1623 Tampa Avenue. The probable cause upon which these warrants were issued was based upon information from a confidential informant to the effect that he had made a controlled purchase of narcotics in both apartments, at different times. At 8:00 one Tuesday evening, a number of police officers executed the warrant to search Apartment No. 1. When they attempted to execute the warrant to search Apartment No. 3, they discovered that their informant had given them, apparently inadvertently, the wrong apartment number. They had been told by their informant that a young woman occupied Apartment No. 3, but an elderly woman answered the door. Furthermore, the informant's description of the location of the apartment corresponded to Apartment No. 4, not Apartment No. 3. However, the actual search warrant simply referred to the apartment as Apartment No. 3, and did not describe its location.

The police officers executing the warrant knocked on the door of Apartment No. 4, and Brenda Jones, evidently answering to the description of the young woman living in Apartment No. 4, answered the knock. She testified that she examined the warrant, and informed the officers that they were at the wrong apartment—that the apartment they wanted was across the hall. Nevertheless, the police officers executing the warrant decided to search Apartment No. 4.

Henderson, Brenda Jones' brother, was present in Apartment No. 4. Henderson was patted down, and a long, round object was felt in his pocket, which the officer thought could have been a weapon. It turned out to be a pipe for the smoking of crack cocaine, which contained a piece of crack cocaine.

Henderson was charged with drug abuse. He moved to suppress the evidence forming the basis for the charge. After a hearing, the trial court granted his motion to suppress.

From the suppression of the evidence forming the basis for the charge, the state appeals.

## II

The state's First Assignment of Error is as follows:

"The trial court erred in sustaining defendant's motion to suppress because the defendant failed to establish his standing to challenge the search warrant."

■ In this assignment of error, the state relies primarily upon *Rakas v. Illinois* (1978), 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387, for the proposition that a person must show more than that he is legitimately on premises where a search is conducted in order to challenge the legality of the search. The state contends that Henderson has not shown that his connection with the premises was strong enough to have given him a legitimate expectation of privacy.

We construe *Rakas v. Illinois, supra,* differently. In that case, the court was at pains to point out that its concern with the over-breadth of *Jones v. United States* (1960), 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, was not based upon the issue of standing, but upon the issue of whether the challenged search intruded upon the objecting party's privacy. Footnote 11, at 439 U.S. 142, 99 S.Ct. 430, 58 L.Ed.2d 400, is instructive:

"This is not to say that such visitors cannot contest the lawfulness of the seizure of evidence or the search if their own property were seized during the search."

This describes Henderson's situation. He is not challenging the propriety of the search of his sister's apartment, generally; he is challenging the search of his own person, incident to that search. The search of his own person could only have been justified if the police officers executing the search had had any right to enter the premises. Therefore, with respect to the search of Henderson's own person, and the seizure of the evidence found upon him, we conclude that Henderson has standing to raise the issue of the legality of the search.

The state's First Assignment of Error is overruled.

### III

The State's Second Assignment of Error is as follows:

"The trial court erred in holding that the search of Apartment 4 at 1623 Tampa was unlawful and that the exigent circumstances exception to the warrant requirement did not apply."

■ The state first relies upon *Maryland v. Garrison* (1987), 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72, for the proposition that a search may be reasonable, and therefore not in violation of the Fourth Amendment, even though it is a search of the wrong place, if the mistake is an innocent one on the part of the searching officers. We reject the state's reliance upon *Maryland v. Garrison, supra.* In that case, the police stopped searching as soon as they discovered their mistake. In the case before us, the police became aware of the fact that, through a mistake, the apartment they wanted

to search was not the apartment named in the warrant, but decided to search anyway. Thus, in this case, unlike in *Maryland v. Garrison*, the police were not relying in good faith upon a defective warrant—they knew that the warrant was defective and elected to conduct a search knowing that it would be outside the scope of the warrant they had obtained.

The state also contends that, as a result of the inadvertent and innocent mistake in the number of the apartment described in the search warrant, a situation arose in which there were exigent circumstances requiring a search of Jones' apartment without a warrant.

■ The information obtained from their informant led the police to conclude that the narcotics being sold in Apartment No. 1 were being supplied from the other apartment (Apartment No. 4, as it turned out). By the time the police officers realized the error in apartment numbers, the search of Apartment No. 1 was already well under way. Therefore, the officers feared that the occupant or occupants in Apartment No. 4 would become aware of the fact that Apartment No. 1 had been searched, and would, as a prudent measure, destroy the cocaine and other narcotics suspected to be present in Apartment No. 4 before a corrected search warrant could be obtained.

The issue is close. Brenda Jones testified as follows when asked to describe her recollection of events that evening:

"Well, I was finishing supper. I heard somebody knocking at the door. I went to the door and asked who was it. They said, 'Police.' So I said who was it again. They covered up the peephole. They said 'Police. Open up.' So I opened up.

"When I opened up the door, one of the Sergenats [*sic*] handed me a paper and he asked me what address was it. I give him the address. He asked me if I know who stayed across the hall. I said, 'Yes, I did.' I told him yes. I gave him the name."

A permissible inference from Brenda Jones' testimony, assuming, as we must, that the trial court credited her testimony, is that nothing had happened up to the time that the officers knocked on her door, which was after they had discovered their mistake, that would have alerted her, and her brother who was with her, that a search had been conducted of Apartment No. 1, or, for that matter, that the police had knocked at the door to Apartment No. 3 with the intention of searching it.

We have found two cases involving somewhat similar situations. In *United States v. Johnson* (C.A.D.C.1986), 802 F.2d 1459, police officers noticed a person in a second floor apartment apparently trying to dispose of a bag, who then withdrew upon seeing police, during the execution of a search warrant

for drugs on a first floor apartment. The court upheld a warrantless search of the second floor apartment, based upon exigent circumstances, observing that to an "even minimally experienced officer this provided evidence that appellant was aware of the police presence and was seeking to dispose of contraband. It is only common sense to conclude that a suspect in this situation could and would dispose of remaining narcotics in the bathroom of the apartment or through some other means if given the time to do so." *Id.* at 1462. In the case before us, however, there is evidence from which the trial court could have concluded that the occupants of Apartment No. 4, at the time that the police officers knocked on the door of Apartment No. 4, were not aware that anything untoward was happening. This makes the case before us more analogous to *United States v. Rosselli* (C.A.7, 1974), 506 F.2d 627. In that case, police officers attempted to justify a warrantless search of an apartment upon the fact that they had just arrested a man who had delivered two boxes of marijuana to that apartment. Present at the arrest was a woman, not arrested, who might have alerted the people at the apartment searched. The court rejected the argument that this was an exigent circumstance justifying a warrantless search, distinguishing that case from *United States v. Rubin* (C.A.3, 1973), 474 F.2d 262. The court reasoned as follows:

"In that situation [the situation in *Rubin*] there was no possible way in which the agents could have prevented such a call and they were entitled to assume that someone would, in fact, make it. Here [none of the arrested persons] made any such request of Miss Ackley [the person present at the arrest]; moreover, if the risk of such a call created an apparent emergency, it could have been avoided by leaving an agent with Miss Ackley and the Anderson children while a warrant was being secured." *United States v. Rosselli* (C.A.7, 1974), 506 F.2d 627, 629.

In the case before us, the trial court might have concluded that, as in *United States v. Rosselli, supra,* the police officers involved could have taken the necessary action to make it unlikely that the occupants of the suspected apartment would have been alerted to the activities of the police until such time as a corrected search warrant could have been obtained. The issue in this case is admittedly closer than the issue in *United States v. Rosselli, supra,* because the possibility existed that the occupants in Apartment No. 4 might have been alerted simply by the commotion involved in the search of Apartment No. 1 and the attempt to search Apartment No. 3. However, if the trial court credited Brenda Jones' testimony, it could have concluded that the noise and commotion emanating from the police activity taking place elsewhere in the apartment building were not so great as to have made it likely that the occupants in Apartment No. 4 would have been alerted as a result. Consequently, we conclude that we may not disturb the trial court's finding

that exigent circumstances did not exist in this case to justify the warrantless search of Apartment No. 4.

Since the oral argument in this case, the state has cited *Hamilton v. Mississippi* (Miss.1990), 556 So.2d 685, as additional authority. In our view, that case is distinguishable.

The court in *Hamilton v. Mississippi, supra,* attached "great importance" to the language of the affidavit for the search warrant and an attached recital of "underlying facts and circumstances," which were expressly incorporated into the search warrant by reference. The affidavit and accompanying document recited that the place to be searched was the "residence of James Hamilton," and described how to get there. The documents referred to a two-story building, and this was the only building visible from the roadway. When the officers executing the warrant knocked on the door of the two-story building, they got no response. They noticed a one-story building behind the two-story building, connected by a walkway. The officers went to the one-story building and found Hamilton, who resided in the one-story building, waiting for them. The Mississippi Supreme Court upheld the search of Hamilton's one-story residence.

In *Hamilton v. Mississippi*, the documents accompanying the search warrant, and incorporated therein by reference, identified the place to be searched as Hamilton's residence. In the case before us, both the warrant and the affidavit simply describe the place to be searched as:

"1623 Tampa Avenue, Apt. # 3, a 12 unit brick apartment building with the numbers '1623' on the south side of the building."

Under the circumstances of this case, unlike in *Hamilton v. Mississippi, supra,* neither the warrant nor the affidavit referred to any place other than Apartment No. 3 as the place to be searched.

The state's Second Assignment of Error is overruled.

## IV

Both of the state's assignments of error having been overruled, the judgment of the trial court will be affirmed.

*Judgment affirmed.*

WOLFF, P.J., and GRADY, J., concur.