920 P.2d 376

**STATE of Hawai'i, Plaintiff-Appellant,**

**v.**

**Wayne MATSUNAGA, Defendant-Appellee.**

**No. 17173.**

Intermediate Court of Appeals of Hawai'i.

June 20, 1996.

Certiorari Denied July 8, 1996.

Caroline M. Mee, Deputy Prosecuting Attorney, Dept. of Prosecuting Atty., City and County of Honolulu, on the briefs, for plaintiff-appellant.

Isaac K. Smith, on the brief, Honolulu, for defendant-appellee.

Before BURNS, C.J., and WATANABE and KIRIMITSU, JJ.

WATANABE, Judge.

This appeal concerns the adequacy of a search warrant description of the place to be searched. The circuit court held that the warrant did not authorize police to search the room where evidence incriminating to Defendant–Appellee Wayne Matsunaga (Defendant) was found and, accordingly, suppressed the evidence. We affirm.

BACKGROUND

Pursuant to an indictment returned on December 12, 1991, Defendant was charged with committing four counts of Possession of Gambling Records in the First Degree, in violation of Hawai'i Revised Statutes (HRS) § 712–1224(1)(a) (1993).[1] On April 3, 1992, Defendant moved to suppress all of the evidence seized during the execution of a search warrant at his work place, contending that the scope of the warrant did not extend to the area where the evidence was found and seized.

The search warrant, issued by a district court judge on October 26, 1989, authorized police officers to search

> [w]ithin the premises of Matsunaga Mechanical Contractors Inc., located on the on the [sic] second level of shopping complex Waikamilo [sic] Plaza located at 1414 Dillingham Boulevard; that there is a directory located on the first floor with the respective suite numbers of the offices on the second level of the shopping complex; that a stairway on the mauka side of the building leads to the offices on the second level of the two story complex; that Matsunaga Mechanical Contractors Inc. is located on the [E]wa/mauka side of the building; that the door of the office is green in color with the numerals 201 and the name MATSUNAGA MECHANICAL CONTRACTORS INC. printed on the door; that the above[-]mentioned business is located within the City and County of Honolulu, State of Hawaii [Hawai'i];
>
> for the following property: Parlay sheets, parlay sheet stubs, gambling records, any writing, paper, instruments, or articles of a kind commonly used in the operation or promotion of a bookmaking scheme or enterprise and United States monies are [sic] now concealed on or within the aforementioned person[2] and vehicle[.]

(Footnote added.) The warrant did not authorize the police to search Defendant's person.

The grounds for issuance of the search warrant were detailed in various attachments to the search warrant. The attachments, which included a statement of the facts and circumstances establishing probable cause for the search (probable cause statement), indicated, among other things, that (1) a confidential informant had observed Norman Nakai (Nakai)[3] placing bets on sporting events after dialing the telephone number 845–5995 and asking for a person named "Wayne"; (2) the dialed telephone number was for the business "Matsunaga Mechanical Contractors, Inc." (Matsunaga Mechanical), the address of which was "1414 Dillingham Blvd. Suite # 201 Honolulu, HI"; and (3) Defendant was the president of Matsunaga Mechanical.

On October 27, 1991, Honolulu police officer Gordon Costa (Officer Costa) and four

1. Hawai'i Revised Statutes (HRS) § 712–1224 (1993) provides, in relevant part, as follows:

> **Possession of gambling records in the first degree.**
>
> (1) A person commits the offense of possession of gambling records in the first degree if the person knowingly possesses, produces, or distributes any writing, paper, instrument, or article:
>
> (a) Of a kind commonly used in the operation or promotion of a bookmaking scheme or enterprise, and constituting, reflecting, or representing more than five bets totaling more than $500[.]

2. Honolulu police officer Gordon Costa testified that the "aforementioned person" referred to in the search warrant was Norman Nakai (Nakai) and that a separate part of the warrant authorized the police to search Nakai's person. *See* footnote 3, *infra*.

3. The probable cause statement indicated that Nakai was a "runner" for a sports gambling operation and was one of the subjects of the police investigation which led to the charges against Defendant–Appellee Wayne Matsunaga (Defendant).

other plainclothes police officers proceeded to the Waiakamilo Plaza (the Building), located at 1414 Dillingham Boulevard, to execute the search warrant.

At the October 19, 1992 hearing on Defendant's motion to suppress, Officer Costa testified that when the officers entered Room 201 of the Building, they asked a secretary where "Wayne" (Wayne) was and the secretary replied that Wayne was "in—his office is room 207 which was down the hall." Officer Costa testified that after obtaining this information, he and the other officers "went on down the hall [to Room 207], [and] knocked on the door." When there was no immediate answer, Officer Costa opened the door and observed Wayne getting up from his desk and coming out of an inner office, presumably heading towards the door to answer it. The officers thereafter conducted a search of Room 207, where they found numerous types of gambling records and paraphernalia.

Although Officer Costa testified that the warrant was executed "on the premises of Matsunaga Mechanical," he admitted that there was no sign outside Room 207 to indicate that the room was part of Matsunaga Mechanical. Officer Costa also acknowledged that there were several businesses located between Rooms 201 and 207, including a travel agency, a financial corporation, and "whatnot."

Defendant offered the following into evidence at the suppression hearing: (1) a diagram of the layout of the second floor of the Building; (2) a photograph of the second floor directory of the Building that listed the tenants of the different rooms on the second floor; (3) photographs of the doors to Rooms 201 and 207; and (4) a photograph of the hallway between Rooms 201 and 207.

The diagram showed that Room 201 was on the Ewa/makai[4] corner and Room 207 was on the Diamond Head/mauka[5] corner of the second floor of the Building; i.e., the two rooms were on diagonal corners of the Building. The diagram also depicted that along the hallway between Rooms 201 and 207 were the doorways to a janitor's closet (Room 202), separate men's and women's rest rooms, and five rooms (Rooms 203 to 206, and 209). The photograph of the second floor directory indicated that Matsunaga Mechanical occupied Room 201 of the Building, other businesses occupied Rooms 203, 205, 206, 209, 210, and 211, and that the names of the occupants for Rooms 204, 207, and 208 were left blank on the directory. Finally, the photographs of the doors to Rooms 201 and 207 showed that Room 201 had a sign reading "Matsunaga Mechanical Contractors, Inc." and a label reading "201," but that Room 207 had only a label reading "207."

In its May 26, 1993 Order Granting Defendant's Motion to Suppress Evidence (suppression order), the circuit court concluded that while there was probable cause for the issuance of the search warrant, the scope of the search authorized by the warrant was limited to Room 201 and did not extend to Room 207 of the Building. The court specifically found that "Room 201 is physically separate from Room 207"; "Room 201 and 207 are separated by a hallway, a janitor's closet, restrooms [sic] and rooms 203, 204, 205, and 206"; "[t]here is no connection, proximity, or affinity between rooms 201 and 207"; "Rooms 201 and 207 are not included or connected in any way"; "[t]he officer's statement that he was told that Defendant was working in room 207 is not enough to sufficiently meet the State's burden of proof"; and "[t]here was nothing to indicate that room 207 was part of Matsunaga Mechanical."

Subsequently, in its May 25, 1993 Order Denying State's Motion for Reconsideration (reconsideration order), the circuit court, based on similar findings, concluded as follows:

> 1. A search warrant must specifically state the place to be searched. The search

4. " 'Ewa" is a "[p]lace name west of Honolulu, used as a direction term." M. Pukui & S. Elbert, *Hawaiian Dictionary* at 42 (rev. & enlarged ed.1986). "Makai" means "on the seaside, toward the sea, in the direction of the sea." *Id.* at 225, 114.

5. "Mauka" means "inland." *Id.* at 242. The Diamond Head/mauka side of the Building refers to the inland side of the Building facing Diamond Head crater.

warrant in this case stated room 201 was to be searched.

2. Room 207 was not the premises referred to in the search warrant nor was it connected with or in close proximity to room 201.

3. Since the place searched was not covered by the search warrant obtained, any evidence seized was seized illegally and is suppressed.

In this timely appeal, the State argues that (1) the circuit court erred in concluding that the search warrant did not authorize police to search Defendant's office in Room 207 of the Building, and (2) even if the scope of the warrant was not broad enough to authorize Room 207 to be searched, the search should be upheld because the officers reasonably believed that Room 207 was part of the premises of Matsunaga Mechanical.[6] We find no merit to either argument.

DISCUSSION

A. *The Requirement for Particularity in a Search Warrant*

The Fourth Amendment of the United States Constitution categorically provides that no search warrant shall issue except one "particularly describing the place to be searched, and the persons or things to be seized." An identical requirement is imposed by article I, section 7 of the Hawai'i Constitution.

In *Maryland v. Garrison,* 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987), the United States Supreme Court explained that

> [t]he manifest purpose of this particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit. Thus, *the scope of a lawful search is defined by the object of the search and the places in which there is probable cause to believe that it may be found.*

*Id.* at 84, 107 S.Ct. at 1016. (Emphasis added; footnote and quotation mark omitted.) The Hawai'i Supreme Court has likewise stated that the purpose of the particularity requirement "is to limit the police as to where they can search, for otherwise the constitutional protection against warrantless searches is meaningless." *State v. Woolsey,* 71 Haw. 638, 640, 802 P.2d 478, 479 (1990).

■ The standard for determining whether a search warrant meets the requirement of particularity "is one of practical accuracy rather than technical nicety[,]" *United States v. Goodman,* 312 F.Supp. 556, 557 (N.D.Ind. 1970) (quoting *United States v. Gomez,* 42 F.R.D. 347 (S.D.N.Y.1967)), and it is not necessary that the description of the place to be searched be as specific as in a recorded deed. *Morales v. State,* 44 Wis.2d 96, 170 N.W.2d 684, 689 (1969). "It is enough if the description is such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended[,]" *Steele v. United States,* 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757 (1925), and "distinguish it from other places in the community." *Ex parte Flores,* 452 S.W.2d 443, 444 (Tex.Crim.App.1970).

■ Where a search warrant is directed at a multiple-dwelling or multiple-office building, the warrant will generally be held invalid unless it describes the *particular* room or

6. Defendant also challenges this court's jurisdiction over the State's appeal from the circuit court's Order Denying the State's Motion for Reconsideration on grounds that such an order is not included in the list of specific instances where an appeal by the State is authorized in criminal cases. *See* HRS § 641-13 (1993).

We note, however, that HRS § 641-13(7) specifically authorizes the State to appeal a "pretrial order granting a motion for the suppression of evidence...." Applying Defendant's argument to its logical extension, if the circuit court had initially denied a motion to suppress but reversed itself in a ruling on a motion for reconsideration, the State would have no right to appeal. Because we will not construe a statute in a manner that will yield an absurd result, *State v. Mundell,* 8 Haw.App. 610, 616, 822 P.2d 23, 27 (1991), *cert. denied* 72 Haw. 619, 841 P.2d 1075 (1991), and even Defendant concedes that we have jurisdiction over the State's pre-trial suppression order, which raises identical issues to the reconsideration order, we conclude that Defendant's argument lacks merit.

sub-unit to be searched with sufficient definiteness to preclude a search of other units in the building occupied by innocent persons. Annotation, *Search Warrant: Sufficiency of Description of Apartment or Room to be Searched in Multiple-Occupancy Structure*, 11 A.L.R.3d 1330, 1333, at § 3 (1967 & Supp. 1995); 68 Am.Jur.2d *Searches and Seizures* § 138, at 758–59 (1993 & Supp.1996); 1 J. Cook, *Constitutional Rights of the Accused* (hereafter *Cook*) § 3:3 at 316–19 (2d ed. 1985 & Supp.1995). This requirement ensures compliance with the constitutional mandate of particularity.

In this case, the search warrant clearly was particularized enough to authorize a search of Room 201 of the Building. The dispositive issue is whether the warrant was also specific enough to authorize a search of Room 207. This issue raises a question of law, which we review *de novo.*

The State contends that the warrant did authorize a search of Room 207 since it commanded the police to search "[w]ithin the premises of Matsunaga Mechanical ..., located on the ... second level of [the Building]." We disagree.

A determination on whether a search warrant complies with constitutional particularity requirements must be made "on a case-by-case basis, taking into account all of the surrounding facts and circumstances." *State v. Kealoha*, 62 Haw. 166, 170–71, 613 P.2d 645, 648 (1980). The cornerstone of such a determination is "the language of the warrant itself[.]" *Id.* at 171, 613 P.2d at 648. Also relevant to this decision are the executing officer's prior knowledge as to the place intended to be searched, *United States v. Goodman*, 312 F.Supp. at 558 (executive officer specifically shown building to be searched in order to acquaint him with it), and the description of the place to be searched appearing in the probable cause affidavit in support of the search warrant. *State v. Bisaccia*, 58 N.J. 586, 279 A.2d 675, 678 (1971).

In this case, the language of the warrant and its attachments did not expressly identify Room 207 as the place to be searched. Additionally, our review of the description of the place to be searched appearing in the warrant, its attachments, and the probable cause statement in support of the warrant convinces us that police officers executing the warrant would not have, based on the description, located Room 207 with reasonable certainty. Moreover, the probable cause statement attached to the search warrant referred only to Room 201 of the Building, and the officers executing the search warrant did not learn that Defendant maintained an office in Room 207 until they went to execute the warrant. Finally, the judge who issued the search warrant was never asked to determine whether there was probable cause to search Room 207.

In light of these circumstances, we agree with the circuit court that the search warrant authorized police to search only the premises of Matsunaga Mechanical located at Room 201 of the Building. To construe the search warrant to allow Room 207 to be searched when no probable cause determination for such a search had been made would render meaningless the particularity requirements of the fourth amendment of the United States Constitution and article I, section 7 of the Hawai'i Constitution.

B. *The Scope of the Authorized Search*

It is well-established that once police officers have obtained a search warrant based on probable cause, "[their] authority to search is limited to the place described in the warrant and does not include additional or different places." *State v. Erickson*, 496 N.W.2d 555, 560 (N.D.1993). *See also State v. Devine*, 307 Or. 341, 768 P.2d 913, 916 (1989); *State v. Llamas–Villa*, 67 Wash.App. 448, 836 P.2d 239, 241 (1992). A search of a place not described in a search warrant amounts to a warrantless search and is unlawful. *People v. Royse*, 173 Colo. 254, 477 P.2d 380, 381 (1970).

However, "[a]reas adjacent to a place described in a warrant, that are under a suspect's exclusive management, control, and domain may at times be deemed part of the premises described in a warrant." *Erickson* at 560. *See e.g., United States v. Prout*, 526 F.2d 380 (5th Cir.) (permissible for police to search apartment above business office described in search warrant where the office

and apartment had a common entrance, there were no identifying marks indicating the existence of two separate premises, and surveillance did not reveal separate utilities or entrances), *cert. denied,* 429 U.S. 840, 97 S.Ct. 114, 50 L.Ed.2d 109 (1976); *State v. Llamas-Villa,* 67 Wash.App. 448, 836 P.2d 239 (locker located in storage room next to apartment and identified with apartment number included in scope of warrant for apartment).

In this case, we have concluded that the language of the warrant authorized only a search of Room 201 of the Building. Therefore, the police were prohibited from searching Room 207 unless Room 207 was found to be part of the premises of Room 201. The circuit court specifically found that there was no connection, proximity, or affinity between the two rooms, and that Room 201 was physically separated from Room 207 by a hallway, a janitor's closet, rest rooms, and Rooms 203, 204, 205, and 206. The circuit court also found nothing in the record to indicate that Room 207 was part of Matsunaga Mechanical.

On appeal from a lower court's order granting a motion to suppress evidence, we apply the clearly erroneous standard of review to the findings of fact made by the court, on which the decision to preclude the admission of evidence is based. *State v. Hoey,* 77 Hawai'i 17, 32, 881 P.2d 504, 519 (1994). A lower court's findings of fact are clearly erroneous when (1) there is no substantial evidence in the record to support the findings; or (2) despite substantial evidence in support of the findings, the appellate court is nevertheless left with a definite and firm conviction that a mistake has been made. *State v. Okumura,* 78 Hawai'i 383, 392, 894 P.2d 80, 89 (1995).

Based on our review of the record, we conclude that the circuit court's findings of fact were not clearly erroneous. Indeed, the State itself conceded that Room 207 was not part of the premises of Room 201. Reply Brief at 8.

C. *The Good-Faith Exception*

Relying in large part on *Maryland v. Garrison,* 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72, and *United States v. Judd,* 687 F.Supp. 1052, 1054 (N.D.Miss.1988), *aff'd,* 889 F.2d 1410 (5th Cir.1989), *cert. denied,* 494 U.S. 1036, 110 S.Ct. 1494, 108 L.Ed.2d 629 (1990), the State contends that even if a search of Room 207 was not specifically authorized by the search warrant, the search should nevertheless be upheld because the police officers who executed the warrant believed, in good faith, that such a search was authorized. We disagree.

We note initially that although the United States Supreme Court has ruled that the fourth amendment's exclusionary rule does not bar the use in the prosecutor's case-in-chief of evidence obtained by police officers acting in reasonable good-faith reliance upon a search warrant ultimately found to be invalid, *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Hawai'i Supreme Court, in *State v. Lopez,* 78 Hawai'i 433, 446, 896 P.2d 889, 902 (1995), appears to have rejected the good-faith exception to the exclusionary rule for purposes of Hawai'i constitutional law.

In *Lopez,* police officers searched for and seized evidence from the defendants' home, after obtaining the consent of one of the defendant's mothers to conduct the search. It was ultimately determined that the mother did not have actual authority to consent to the search. The officers nevertheless contended that the search and seizure should be upheld because they reasonably believed that the mother possessed authority to consent to the search and that they acted in good faith in conducting the search and seizure. The supreme court acknowledged that under *Leon,* "the primary purpose of the exclusionary rule on the federal level is to deter illegal police conduct," and therefore, the exclusionary rule does not apply when police officers acted in good faith in seizing evidence. *Id.* However, the supreme court held that for purposes of Hawai'i constitutional law, an equally valuable purpose of the exclusionary rule "is to protect the *privacy* rights of our citizens." *Id.* (emphasis in original). In departing from the federal rationale of the

exclusionary rule, the supreme court embraced the holding in *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887, 896–99 (1991), which "reject[ed] the federal 'good[-]faith' exception to the exclusionary rule and [held] that the purpose of the exclusionary rule in Pennsylvania is to safeguard individual privacy rights." *Id.*

Even if Hawai'i did recognize the good-faith exception rule, we conclude that the exception would not apply to the facts in this case.

In *Maryland v. Garrison,* 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72, police officers obtained a warrant to search the person of Lawrence McWebb and "the premises known as 2036 Park Avenue third[-]floor apartment[.]" When the officers applied for and executed the warrant, they believed that there was only one third-floor apartment. *Id.* at 80, 107 S.Ct. at 1014–15. After the police discovered the contraband sought, they learned that the third floor was actually divided into two apartments, one occupied by McWebb and the other by Garrison, and that the contraband was actually found in Garrison's apartment. *Id.*

The United States Supreme Court initially held that the warrant was valid when issued, since it was based on information in public records that only one apartment existed on the third floor. The Court also held that the reasonableness of the execution of the search warrant depended on "whether the officers' failure to realize the overbreadth of the warrant was objectively understandable and reasonable." *Id.* at 88, 107 S.Ct. at 1018. Because the objective facts available to the police "suggested no distinction between McWebb's apartment and the third[-]floor premises[,]" the Court concluded that execution of the warrant reasonably included the entire third floor and the officers' conduct was thus reasonable. *Id.* at 88, 107 S.Ct. at 1018.

In *Judd,* 687 F.Supp. 1052, a search warrant authorized agents of the Federal Bureau of Investigation to search "the premises known as Kilgore Mining Co., Inc., 9172 Highway 51 N., Suite B., Southaven ... and to seize all business records and documents of Kilgore Mining Co., Inc." *Id.* at 1054 (internal quotation marks and brackets omitted). While executing the warrant, the agents discovered that many of the important records were no longer located at the "9172" offices. The agents asked the president and owner of Kilgore Mining where the records were located. The president asked his secretary to show the agents where the records were, and both he and his secretary then escorted the agents out the front door of the "9172" offices, through an adjacent door opening into a breezeway leading to Kilgore Mining's bookkeeping office, the "9170" office, located about twenty-five to thirty feet from the front entrance to "9172," and in the same office building. *Id.*

The *Judd* court, relying on *Steele v. United States,* 267 U.S. 498, 45 S.Ct. 414, 69 L.Ed. 757, defined the issue as whether the description of the warrant was sufficient to include both the "9172" and "9170" offices of the Kilgore Mining Co. The court determined that "the photographs and testimony ma[de] clear that the offices [were] connected and it [was] reasonable to consider the [']9170['] bookkeeping office as part of the Kilgore Mining office suite[,]" and therefore, found that the warrant authorized the search of the "9170" office. *Id.* at 1055, 1059. The court also held that even if the search warrant were restrictively construed to authorize only a search of the "9172" offices, the search of the "9170" office would nevertheless be upheld because the officers executing the warrant "reasonably believed that the office was within the scope of the description in the warrant." *Id.* at 1059.

Based on our review of the record, we conclude that the officers here could not have had a good-faith belief that Room 207 was included within the scope of the search warrant. The facts and circumstances in this case are quite different from both *Garrison* and *Judd.*

Unlike in *Garrison,* where the police did not become aware that there were two distinct apartments until after they had conducted their search, here, the objective facts suggest that the police were aware, before they conducted their search, that there was a distinction between Rooms 201 and 207.

Unlike in *Judd*, where the offices were connected and closely situated, here, Rooms 201 and 207 were on opposite corners of the Building and separated by a number of rooms occupied by other businesses. Although the police officers had a warrant which clearly authorized them to search Room 201, they did not commence their search in Room 201. Instead, upon learning that Defendant was in Room 207, the officers proceeded directly to Room 207 to conduct their search, even though they had no warrant to search Defendant's person. There is also no evidence in the record that Room 207 was even affiliated with Matsunaga Mechanical or that Defendant conducted any business for the company in Room 207.

Under the circumstances in this case, we agree with the Oregon Supreme Court that "a warrant for the search of certain premises applies only to those premises and ... if, at some time during the search, separate premises are encountered and searched, the search of the latter is unauthorized without regard to whether the officers could have anticipated ahead of time that they would encounter those separate premises." *State v. Devine*, 768 P.2d at 916. The search of a room which is clearly not within the scope of a search warrant cannot be reasonable or in good faith. *State v. Henderson*, 66 Ohio App.3d 447, 585 N.E.2d 539 (1990) (where police realized that the wrong apartment number was named in the warrant, they did not act in good faith in searching an apartment other than the one named in the warrant, even though the apartment they were searching was the one actually intended to be searched). This maxim is especially true in the instant case, where the police officers could have obtained via the telephone an amendment to the warrant to allow Room 207 to be searched. Hawai'i Rules of Penal Procedure Rule 41; *State v. Dorson*, 62 Haw. 377, 386 n. 4, 615 P.2d 740, 746 n. 4 (1980).

## CONCLUSION

For the foregoing reasons, we affirm the May 26, 1993 Order Granting Defendant's Motion to Suppress Evidence and the May 25, 1993 Order Denying State's Motion for Reconsideration.