Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000715
17-JUN-2020
07:46 AM

NO. CAAP-18-0000715

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I,
Plaintiff-Appellant,
v.
STEVEN DUDLEY VEGA,
Defendant-Appellee


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CR. NO. 3CPC-18-0000409)


SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, Chan and Hiraoka, JJ.)

Plaintiff-Appellant State of Hawai'i (State) appeals from the September 13, 2018 Findings of Fact, Conclusions of Law and Order Granting Defendant's Motion to Suppress Evidence (Order Granting Motion to Suppress), entered by the Circuit Court of the Third Circuit (circuit court).[1] Defendant-Appellee Steven Dudley Vega (Vega) was charged with, *inter alia*, one count of Promoting a Dangerous Drug in the Third Degree, in violation of Hawaii Revised Statutes (HRS) § 712-1243(1) (2014), and one count of Prohibited Acts Related to Drug Paraphernalia, in violation of HRS § 329-43.5(a) (Supp. 2018).[2] Vega sought to suppress all

---

[1] The Honorable Robert D.S. Kim presided.

[2] The record on appeal only contained the record from the circuit court proceedings, which did not include the complaint filed against Vega. We take judicial notice of the complaint filed May 15, 2018, during the initial

evidence obtained and resulting from the search of his van on the basis that the search warrant did not particularly describe the van as a place to be searched. The circuit court granted the motion.

On appeal, the State argues that the circuit court erred in: (1) making findings of fact that were based on evidence not contained in the record or misstated the evidence presented; (2) concluding that the three tarp/tent enclosures and the van required separate search warrants and that the search warrant in this case did not permit a search of the van; and (3) concluding that the information supporting the search warrant could have been old, which was an argument that Vega had not raised in his motion to suppress. Related to these arguments, the State challenges Findings of Fact (FOFs) 11-17 and 21, and Conclusions of Law (COLs) 4-6, 8, 10-12, 14, and 16-18.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve this appeal as follows.

Jurisdiction

As a preliminary matter, we first address whether this court has jurisdiction over this appeal from the Order Denying Motion to Suppress. Vega filed a statement contesting jurisdiction as allowed by Hawaiʻi Rules of Appellate Procedure Rule 12.1(a). Vega argued that this appeal was invalid as an interlocutory appeal because no application for an interlocutory appeal was filed in the circuit court as required under HRS § 641-17 (2016). In his Answering Brief, Vega again raises the question of jurisdiction and also challenges the circuit court's stay of proceedings.

HRS § 641-13(7) (2016) expressly authorizes the State to appeal "[f]rom a pretrial order granting a motion for the

proceedings against Vega in the District Court of the Third Circuit. Hawaiʻi Rules of Evidence (HRE) Rule 201(c) (2016).

2

suppression of evidence, including a confession or admission, or the return of property," in a criminal matter from the district or circuit court, and states that "the order shall be stayed pending the outcome of the appeal."  The September 13, 2018 Order Granting Motion to Suppress is appealable under HRS § 641-13(7). The State timely filed its Notice of Appeal on September 18, 2018, within thirty days after the circuit court's entry of the Order Granting Motion to Suppress.  We conclude that we have jurisdiction to hear this appeal.

Upon the State's filing of the Notice of Appeal, the Order Granting Motion to Suppress was stayed pending the outcome of this appeal.  HRS § 641-13(7).  Vega's contention regarding the circuit court's stay of proceedings therefore has no merit.

Alleged Erroneous Findings of Fact

The State first argues that FOFs 11-16 rely on evidence that was not contained in the record.  The State does not dispute the factual accuracy of these FOFs but simply asserts that they are based on evidence not in the record.  In his Answering Brief, Vega does not attempt to controvert the State's argument that FOFs 11-16 are not supported by evidence in the record.  Rather, Vega asserts that the facts provided in FOFs 11-16 are irrelevant to the circuit court's analysis of the validity of the search warrant and suppression of the evidence.

In FOFs 11-16, the circuit found:

> 11. The search occurred on May 14, 2018, during the early day-time hours, including of the blue van, the windows to which the police broke in order to gain entry.
>
> 12. Police removed Defendant from the back of the van where he had been lying on a mattress.
>
> 13. The police did not see contraband in plain view.
>
> 14. The police proceeded to search the van, including the removal of the mattress, and found, behind the front passenger seat, the contraband, the possession of which Defendant stands charged.
>
> 15. The police did not know and did not seem to have investigated who the owner of the van was, nor whether its registration was current, or if it was otherwise legal or if it was in running condition.

> 16. It is common knowledge that people often use vans for sleeping in, whether on a camping trip, or as a place to live during homeless periods of time.

FOF 16 reflects a matter of common knowledge, of which judicial notice may properly be taken.  See State v. Lord, 63 Haw. 270, 272, 625 P.2d 1038, 1039 (1981); see also HRE Rule 201(b), (c).

It appears that these FOFs 11-15 were based on Officer Pedro Cacho's testimony given at the preliminary hearing.  The transcript of Officer Cacho's preliminary hearing testimony was entered into evidence as an exhibit for the motion to dismiss which was heard on the same day as the motion to suppress. Although the transcript was not specifically submitted in support of the motion to suppress, its appearance in the record is sufficient to constitute substantial evidence in support of FOFs 11-16 in the Order Granting Motion to Suppress, where the facts themselves are not in dispute.

The State's challenge to FOF 17[3] and 21[4] appears to be that the findings contradict the testimony of Officer Eric Reyes (Officer Reyes) during the hearing on the motion to suppress and the affidavit supporting the search warrant.  The State emphasizes that Officer Reyes was the only witness who testified during the hearing on the motion to suppress.

FOFs 17 and 21 are accurate representations of the information provided in Officer Reyes's affidavit in support of the search warrant as well as Officer Reyes's testimony.  It was within the province of the circuit court to assess the credibility of the witness.  State v. Jenkins, 93 Hawaiʻi 87, 101, 997 P.2d 13, 27 (2000).  These findings are therefore not clearly erroneous.

---

[3]    FOF 17 provided: "17. The officers had advance information that the Defendant occasionally slept in the van."

[4]    FOF 21 provided: "21. Information the police had was that Defendant was staying there, but there was no mention of other persons being, living or sleeping there, or not."

<u>Suppression of Evidence from Van</u>

The State next argues that the circuit court erred in concluding that: the tarp/tent enclosures and the van were separate units; each separate unit, including the van, required a separate search warrant; and evidence obtained from the search of the van should be suppressed because the search warrant did not describe the van with particularity. The State asserts that the evidence obtained from the van should not have been suppressed because the tarp/tent enclosures and the van did not constitute separate residences/units requiring separate search warrants, and that the search of the van was within the scope of the search warrant. Related to this argument, the State challenges the following COLs:

> 4. Believing there were three separate tent-tarp structures on the premises and a van under one of them, the police had an obligation to establish probable cause for search warrants for each of the separate, unattached units.
>
> 5. This particularly applies to the van which was a completely enclosed, separate unit on the premises secured by a lock and key.
>
> 6. The tarp/tent structures and the van were each a separate residence, and there was no information provided that Defendant ever lived or slept in either of the other two tarp/tent structures.
>
> . . . .
>
> 8. Here, the van is a separate unit (as is any personal mode of transportation). The other tarp/tent enclosures provided no specific access to the van, and there was no evidence the van was being used in common by anyone else on the premises.
>
> . . . .
>
> 10. In the three search warrants, the van itself was not particularly described as a place to be searched; rather it appears in the description of the premises and in the Officer's affidavit as a place where Defendant may sleep.
>
> 11. That the police believed the Defendant was sleeping in the van made the van a special place even more like a separate residence than the other couple of tarp/tents; there is no evidence that the "main" tarp covered anything other than the van making it less of a separate enclosure than just a guard to protect the van from the weather, as many owners of vehicles and tarps do.

12. Therefore, there needed to be a separate warrant more particularly pinpointing the van as a place to be searched.

. . . .

14. The warrants, not being valid for the van, were used improperly in searching the van after the Defendant was removed from the van.

The State asserts that COLs 4, 10, and 12 are mixed FOFs and COLs and were clearly erroneous. The State also argues that COLs 5, 6, 8, 11, and 14 were wrong as they were based upon facts that were not in evidence or they misstated the evidence.

Case law pertaining to the validity of a search and seizure pursuant to a search warrant is well-established:

> The Hawaiʻi Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures and invasions of privacy shall not be violated; and no warrants shall issue but upon probable cause . . . and particularly describing the place to be searched[.]" Haw. Const. art. I, § 7. The particularity requirement ensures that a search pursuant to a warrant "limit[s] the police as to where they can search, for otherwise the constitutional protection against warrantless searches is meaningless." State v. Anderson, 84 Hawaiʻi 462, 467, 935 P.2d 1007, 1012 (1997) (quoting State v. Woolsey, 71 Haw. 638, 640, 802 P.2d 478, 479 (1990)). A determination regarding whether a warrant satisfies the particularity requirement must be made "on a case-by-case basis, taking into account all of the surrounding facts and circumstances." Id. at 468, 935 P.2d at 1013 (quoting State v. Kealoha, 62 Haw. 166, 170-71, 613 P.2d 645, 648 (1980)). While "[t]he cornerstone of such a determination is the language of the warrant itself," the "executing officer's prior knowledge as to the place intended to be searched, and the description of the place to be searched appearing in the probable cause affidavit in support of the search warrant" is also relevant. Id. (quoting State v. Matsunaga, 82 Hawaiʻi 162, 167, 920 P.2d 376, 381 (App. 1996)).

State v. Rodrigues, 145 Hawaiʻi 487, 494, 454 P.3d 428, 435 (2019) (footnote omitted).

In the Affidavit for Search Warrant (Affidavit), Officer Reyes stated that he received information from three sources identifying Vega as a methamphetamine supplier. The first source: "related that VEGA typically operates and distributes his methamphetamine supply out of the campsite on Kahei Road"; "described the campsite as being [] numerous tents

6

and tarps in close proximity to each other"; "related that VEGA will carry his methamphetamine supply in a waist pack, when leaving the campsite; and "related that VEGA periodically sleeps in a van parked under the tarp/tent."  The second source related that: "VEGA lives at the property/campsite (with multiple tents) on Kahei Road"; "VEGA also usually conceals/stores his methamphetamine in a 'fanny bag' or waist pack"; "VEGA conducts his drug transactions at the campsite on Kahei Road."  Finally, Officer Reyes stated that another Hawaiʻi Police Department Police Officer, Officer John Kahalioumi, provided information from a confidential informant (CI) regarding Vega.  Officer Kahalioumi related that the CI "specifically gave the location of VEGA's residence as being located off of Kahei Road and described it as a 'tent campsite'"; "related . . . that VEGA typically stores his methamphetamine supply in a 'fanny bag' at the campsite"; and "confirmed that there are three 'tent' structures that VEGA utilizes on the campsite."

Officer Reyes also made the following statements in his Affidavit:

> Your affiant states that based on the CI statement that VEGA occupies/utilizes the three separate tent/tarp enclosures and the corroborating statements from [the other informants] (that there are multiple tent/tarp enclosures on the property); your affiant believes that VEGA is in control of all three tent/tarp enclosures and the parked van under the main tarp/tent enclosure.
>
> Your affiant further states that two of the three tent/tarp enclosures are not visible from Kahei Road; thus making a photograph or physical description impossible. Your affiant has attached a photograph of one of the tent/tarp enclosures (the main tent/tarp with the van parked underneath) that he is requesting to search.

The Affidavit requested to search the following location:

> The property/campsite known to be occupied by Steven VEGA located on Kahei Road, Hawi Hawaiʻi . . . .  The property/campsite can be further described as three separate tarp/tent enclosures and in close proximity to each other (approximately 7 feet).  The main tarp/tent enclosure also has a van (unknown make and/or model) parked underneath. Refer to Exhibit "A" for a photograph of the main tarp/tent enclosure visible from Kahei Road.

In his motion to suppress, Vega argued that "[t]he Affidavit for Search Warrant of the campsite fail[ed] to request with particularity a search of the van parked under the tarp. Rather, the van [wa]s used as a description of the site, and its presence [wa]s merely noted." Vega maintained that the search warrant, which adopted the same language of the property description as in the affidavit, "fail[ed] to expressly allow search of the van[.]" In its opposition to the motion to suppress, the State responded that the van, which was described as being parked underneath the main tarp/tent enclosure, was "clearly identified in the warrant as being an area to be searched" and the search warrant provided "specificity that describe[d] this campsite to the exclusion of all others." In his reply memorandum in support of his motion to suppress, Vega asserted that the van itself was a separate residence requiring a separate search warrant and also noted that the two other tarp/tent enclosures, "if closed all around, could well have been separate 'residences.'"

The circuit court found that the tents and the van constituted separate residences or units. In reaching this conclusion, the circuit court likened the tent/tarp enclosures to a multiple-occupancy dwelling or building and relied in part on this court's opinion in Matsunaga, in which we recited that "[w]here a search warrant is directed at a multiple-dwelling or multiple-office building, the warrant will generally be held invalid unless it describes the particular room or sub-unit to be searched with sufficient definiteness[.]" 82 Hawaiʻi at 166-67, 920 P.2d at 380-81 (emphasis omitted) (citing Annotation, Search Warrant: Sufficiency of Description of Apartment or Room to be Searched in Multiple-Occupancy Structure, 11 A.L.R.3d 1330, 1333, at § 3 (1967 & Supp. 1995); 68 Am. Jur. 2d Searches and Seizures § 138, at 758-59 (1993 & Supp. 1996); and 1 J. Cook, Constitutional Rights of the Accused § 3:3 at 316-19 (2d ed. 1985 & Supp.1995)). The rationale behind this requirement in

8

Matsunaga was to "preclude a search of other units in the building occupied by innocent persons" and comply with the constitutional mandate of particularity.  Id. at 167, 920 P.2d at 381.

The circuit court failed to take into consideration that,

> [a] search warrant . . . is not defective for failing to specify a subunit within the designated building if the building "from its outward appearance would be taken to be a single-occupancy structure and neither the affiant nor other investigating officers nor the executing officers knew or had reason to know of the structure's actual multiple-occupancy character until execution of the warrant was under way." Anderson, 84 Hawaiʻi at 468, 935 P.2d at 1013 (quoting 2 [Wayne R.] LaFave, [Search and Seizure] § 4.5(b), at 526-29 [3d ed. 1996]).

Rodrigues, 145 Hawaiʻi at 495, 454 P.3d at 436.

In Rodrigues, the defendant lived in a downstairs studio unit of a house.  Id. at 491, 454 P.3d at 432.  The defendant moved to suppress evidence obtained from a search of his residence on the basis that the search warrant did not state with specificity the subunit in which he resided.  Id. at 488, 454 P.3d at 429.  "The circuit court determined that the searched building was a multiple-occupancy building and that the affiant officer knew or should have known that the defendant's subunit was a separate unit."  Id.  The search warrant described the property as "a three bedroom, 2 bathroom residence that is light colored, and has a white colored rooftop[,]" "located at Puuhalo Street in Kailua-Kona, Hawaiʻi."  Id. at 490, 454 P.3d at 431 (original brackets omitted).  In determining whether the search warrant satisfied the particularity requirement, the supreme court analyzed "(1) whether the structure would be viewed as a multiple-occupancy structure from its outward appearance, and (2) whether the affiant or other investigating or executing officers knew or had reason to know of the structure's actual multiple-occupancy character prior to the commencement of execution of the warrant."  Id. at 495, 454 P.3d at 436.  The downstairs unit had a different appearance than the remainder of

the house, a roof that was not connected to the roof covering the rest of the house, and an entrance that was separate from the upstairs portion and accessible from a separate street. Id. The police officer who both drafted the affidavit and executed the search warrant had personal knowledge, prior to the execution of the search warrant, of the details of the downstairs unit and that multiple families had been separately living in the building. Id. at 496, 454 P.3d at 437. The supreme court held that the circuit court's unchallenged findings of fact, which were grounded in the testimony and evidence in the record, demonstrated that: (1) the building's outward appearance indicated that the defendant's downstairs unit was separate and distinct from the upstairs unit; and (2) the police officer who both drafted the affidavit and executed the search warrant had personal knowledge that the residence was a multi-unit dwelling. Id. at 497, 454 P.3d at 438. Thus, the search warrant, which did not describe the separate downstairs unit, failed to satisfy the constitutional particularity requirement and was invalid. Id.

In this case, instead of a structural building, the property in question was described as a campsite made up of three tarp/tent enclosures. The circuit court made no finding that the property was in fact a multiple-occupancy dwelling, yet the court found that the three tarp/tent structures and the van were separate units or residences requiring separate search warrants. The circuit court concluded that the van was a "completely enclosed, separate unit on the premises secured by a lock and key"[5] and that the van was "a separate unit (as is any personal mode of transportation)." Vega asserts that the circuit court correctly concluded that the van constituted a separate residential unit. The circuit court's conclusion that each tarp/tent enclosure and the van itself constituted a separate unit or residence appears to have been based primarily on the

---

[5]     We note that there are no facts in the record expressly supporting the circuit court's finding that the van was secured by a lock and key.

10

arrangement of the tarp/tent enclosures and the van.

Physically, the tarp/tent enclosures were separate structures with no overlapping parts. However, the tarp/tent enclosures were "in close proximity to each other (approximately 7 feet)" and the van was parked underneath one of the tarp/tent enclosures. The information in the affidavit stated that Vega utilized the three tarp/tent enclosures as his residence and that he would sleep in the van. Based on such information, Officer Reyes stated his belief that Vega was "in control of all three tent/tarp enclosures and the parked van under the main tarp/tent enclosure." Officer Reyes testified that, based on his investigation and his sources of information, Vega was the only individual that was identified and confirmed to be staying on the property and sleeping in the van. There was no evidence indicating that there were multiple occupants of the tarp/tent set-up. Unchallenged FOF 20, which is binding on appeal, see Kelly v. 1250 Oceanside Partners, 111 Hawai‘i 205, 227, 140 P.3d 985, 1007 (2006), states: "No one else was found on the property at the time the search warrants were executed, but there is no evidence that no one else lived on the property."

As the proponent of the motion to suppress, Vega bore the burden of proving, by a preponderance of the evidence, that the evidence he sought to be excluded was unlawfully secured, and that his own Fourth Amendment rights were violated by the search and seizure. See Anderson, 84 Hawai‘i at 467, 935 P.2d at 1012. Vega did not prove by a preponderance of the evidence that the campsite described in the search warrant was occupied by multiple individuals, requiring an analysis of whether the areas of the campsite constituted separate units or residences. Therefore, the circuit court, without finding that the campsite was occupied by multiple occupants, wrongly concluded that each tarp/tent structure and the van within the campsite required a separate search warrant. In the absence of a finding that other individuals occupied the campsite, there was no danger that the

search warrant was overbroad as to result in a search of spaces occupied by innocent persons. See Matsunaga, 82 Hawai'i at 166-67, 920 P.2d at 380-81.

In arguing that the van constituted a separate residential unit, Vega seems to assert that he had a reasonable expectation of privacy in the van that was separate and apart from that of the rest of the campsite. As discussed *supra*, Vega did not prove by a preponderance of the evidence that the campsite housed multiple occupants. The evidence shows that Vega used the entire campsite property as his residence. Under such circumstances, the van was akin to a locked bedroom in a dwelling. Although technically a vehicle, the van was not used as a mode of transportation, but as an area to sleep. Indeed, the van had not moved for months. Like a locked room in either shared or single occupancy dwellings, the fact that the van in the tarp/tent enclosure may have had a lock and key did not mean the van automatically constituted a separate residential unit. See Anderson, 84 Hawai'i at 469, 935 P.2d at 1014 ("[A] locked bedroom door does not, by itself, automatically elevate the bedroom to the status of a separate residential unit." (citing United States v. Kyles, 40 F.3d 519, 524 (2d Cir. 1994); People v. Siegwarth, 674 N.E.2d 508, 511 (Ill. App. Ct. 1996); and State v. Hymer, 400 So.2d 637, 639 (La. 1981))). The search warrant could nonetheless be valid with respect to the van if "the objective facts available to the police officer[] at the time [he] obtained the search warrant did not reasonably suggest that the [subunit] was a residential unit that was separate and distinct from the remainder of the dwelling[.]" Id. Here, the facts available to Officer Reyes at the time he obtained the search warrant were that the three tarp/tent enclosures were in close proximity to each other, the van was parked under the main tarp/tent enclosure, and Vega utilized and was in control of the entire campsite. These facts, taken together, suggested no obvious distinction between access of the van and access of the

12

rest of the campsite.

The search warrant authorized a search of the "property/campsite known to be occupied by Steven VEGA," which consisted of three tarp/tent enclosures and the "van (unknown make and/or model) parked underneath" the "main tarp/tent enclosure." In his affidavit, Officer Reyes stated that two of the three tent/tarp enclosures were not visible from the public road, making a photograph or physical description impossible. Officer Reyes testified that the van could not be identified via a license plate or any other description because it was covered by the tarps. The search warrant specifically identified the van as a part of the campsite, and described the van to the extent possible given the factual circumstances. This was not a case where the search warrant did not contain any mention of the subunit alleged to be wrongly searched. See, e.g., Rodrigues, 145 Hawaiʻi at 496-97, 454 P.3d at 437-38; Matsunaga, 82 Hawaiʻi at 167, 920 P.2d at 381. We therefore conclude that the search warrant was constitutionally valid with respect to the van and the circuit court erred in suppressing the evidence obtained from the search of the van on this basis.

Finally, the State challenges COLs 16-18 by arguing that the circuit court erroneously ruled on the issue of the staleness of the information supporting the affidavit because that issue was not raised in Vega's motion to suppress. The State maintains that it was improper for the court to rule on the issue because the State was deprived of an opportunity to argue its opposition.

Hawaiʻi Rules of Penal Procedure (HRPP) Rule 47 (eff. 2000) requires that a motion to the court "be in writing unless the court permits it to be made orally" and "state the grounds upon which it is made[.]" "The requirement that motions be in writing is intended to provide notice to the adverse party of the grounds for the motion and its pendency." State v. Kalani, 3 Haw. App. 334, 339, 649 P.2d 1188, 1193 (1982) (citing 5 Wright &

13

Miller, <u>Federal Practice & Procedure: Civil</u> § 1191 (1969)) (looking to Hawai'i Rules of Civil Procedure Rule 7(b)(1) for guidance in analyzing HRPP Rule 47 for purposes of a pretrial motion to suppress). Under HRPP Rule 12(b)(3) (eff. 2007), motions to suppress must be raised prior to trial and may be written or oral at the discretion of the judge. Under HRPP Rule 12(f) (eff. 2007), "[f]ailure by a party to raise defenses or objections or to make requests which must be made prior to trial, within the [pretrial motion deadline], or within any extension thereof made by the court, shall constitute <u>waiver</u> thereof, but the court for cause shown may grant relief from the waiver." (Emphasis added.)

Here, Vega's motion to suppress did not present any argument based on probable cause or the staleness of the information supporting the affidavit; it merely addressed the issue of whether the search warrant met the particularity requirement in regards to the van. At the suppression hearing, the circuit court emphasized the need to look at the "four corners" of the search warrant and allowed Officer Reyes to testify as to his prior knowledge, indicating that it would be addressing the sole issue briefed in the parties' memoranda--the validity of the search warrant in terms of its particularity. The circuit court never mentioned that probable cause for the search warrant was an issue that needed to be addressed. Nonetheless, during cross-examination, defense counsel questioned Officer Reyes regarding the time period over which he obtained the information supporting his affidavit. Then, in COLs 16-18 of the Order Denying Motion to Suppress, the circuit court concluded that the information supporting the search warrant could have been as much as two years old and stale, and on that grounds alone, the evidence should be suppressed.

Because Vega did not raise the issue of staleness of the information supporting probable cause in his motion to suppress, and Vega did not show cause for his failure to raise

the issue, the issue should have been waived.  The State was not provided with notice that the circuit court would be considering the issue and the State thus had no opportunity to prepare itself to argue and present evidence on it.  The State was unfairly prejudiced in this regard.  Accordingly, the circuit court erred in ruling on the issue of staleness and relying on it as a basis for suppression.

Based on the foregoing, the September 13, 2018 Findings of Fact, Conclusions of Law and Order Granting Defendant's Motion to Suppress Evidence, entered in the Circuit Court of the Third Circuit, is vacated and this matter is remanded for further proceedings.

DATED:  Honolulu, Hawaiʻi, June 17, 2020.

On the briefs:

Kauanoe A. Jackson,
Deputy Prosecuting Attorney,
County of Hawaiʻi,
for Plaintiff-Appellant.

Frank L. Miller,
for Defendant-Appellee.

/s/ Katherine G. Leonard
Presiding Judge


/s/ Derrick H. M. Chan
Associate Judge


/s/ Keith K. Hiraoka
Associate Judge