935 P.2d 1007

STATE of Hawai'i, Plaintiff–Appellant,

v.

William David ANDERSON, Jr., Defendant–Appellee.

No. 18411.

Supreme Court of Hawai'i.

March 31, 1997.

Mark R. Simonds, Deputy Prosecuting Attorney, on the briefs, Wailuku, for plaintiff-appellant.

Keith E. Tanaka, on the briefs, Wailuku, for defendant-appellee.

MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

NAKAYAMA, Justice.

Plaintiff-appellant State of Hawai‘i (the prosecution) appeals from a pretrial court order suppressing contraband seized by police officers while searching a bedroom allegedly belonging to defendant-appellee William David Anderson, Jr., (Anderson). Based on the seized contraband, the prosecution charged Anderson with promoting a dangerous drug in the third degree in violation of Hawai‘i Revised Statutes (HRS) § 712–1243(1) (1993),[1] prohibited acts related to drug paraphernalia in violation of HRS § 329–43.5(a) (1993),[2] felon in possession of a firearm in violation of HRS § 134–7(b) (1993),[3] and felon in possession of ammuni-

---

**1.** Under HRS § 712–1243(1) (1993), a "person commits the offense of promoting a dangerous drug in the third degree if the person knowingly possesses any dangerous drug in any amount."

**2.** HRS § 329–43.5 (1993) provides in pertinent part:

**§ 329–43.5 Prohibited acts related to drug paraphernalia.** (a) It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the

human body a controlled substance in violation of this chapter. Any person who violates this section is guilty of a class C felony and upon conviction may be imprisoned pursuant to section 706–660 and, if appropriate as provided in section 706–641, find pursuant to section 706–640.

**3.** HRS § 134–7 (1993) provides in pertinent part:

**§ 134–7 Ownership or possession prohibited, when; penalty. . . .**

(b) No person who is under indictment for, or has waived indictment for, or has been bound over to the circuit court for, or has been convicted in this State or elsewhere of having

tion in violation of 134-7(b). The prosecution contends that the circuit court erred by concluding, among other things, that the police officers' warrant to search the dwelling did not authorize the search of Anderson's alleged bedroom. For the reasons stated below, we agree with the prosecution, and, thus, we vacate the circuit court's order and remand to the circuit court for further proceedings.

## I. BACKGROUND

On March 18, 1994, Anderson was indicted for promoting a dangerous drug in the third degree, prohibited acts related to drug paraphernalia, felon in possession of a firearm, and felon in possession of ammunition. On June 30, 1994, the circuit court granted Anderson's motion for disclosure of the affidavit that police officers had presented in order to obtain a warrant allowing them to search "within the premises, located at 2253 Mokuhau Road, Wailuku, Maui[.]" The affiant, Police Officer George Kronoski (Officer Kronoski) of the Maui County Police Department (MPD), made the following statements in his affidavit on December 8, 1993:

That Affiant is and has been a member of the Maui County Police Department since 1984 and is presently assigned to the Vice Division;

That Affiant has been assigned and is investigating the alleged offenses of Promoting a Dangerous Drug in violation of Chapter 712 of the Hawaii Revised Statutes and Prohibited Acts Related to Drug Paraphernalia in Violation of Chapter 329 of the Hawaii Revised Statutes at and within the following premises: located at 2253 Mokuhau Road, Wailuku, Maui, Hawaii; Tax Map Key No. 3-4-35-40: described as being a single story wooden/cement structure, having a single carport attached to the Waihee side of the residence, structure has a red colored corrugated metal roof, and the structure is a yellow/orange color having light green colored trim. There are the numerals 2253 attached to the post of the carport facing the Waihee direction, the numerals are

committed a felony, or any crime of violence, or an illegal sale of any drug shall own pos-

black in color. The front door of the residence faces the Waihee direction. There is a walkway which leads to the middle portion of the dwelling and has another entrance to another portion of the dwelling which is connected by the same roof and is part of the entire structure. The walkway faces the Iao Valley direction. The residence has a driveway leading from Mokuhau Road, to the residence. There are several other separate dwellings located on the same premises which are not subject to this investigation.

The above described structure is believed to be the residence of two male parties known only as "Abe" and "Barney."

On December 8, 1993, a district court judge issued a search warrant that included, among other things, the following information:

Proof by affidavit having been made before me this 08th day of December 1993, by OFFICER George KRONOSKI, of the Maui County Police Department. that he has reason to believe that there is sufficient probable cause for me to direct that a search be made within the premises, located at 2253 Mokuhau Road, Wailuku, Maui, Hawaii, Tax Map Key No. 3-4-35-40: described as being a single story wooden/cement structure, having a single carport attached to the Waihee side of the residence, structure has a red colored corrugated metal roof, and the structure is a yellow/orange color having light green colored trim. There are the numerals 2253 attached to the post of the carport facing the Waihee direction, the numerals are black in color. The front door of the residence faces the Waihee direction. There is a walkway which leads to the middle portion of the dwelling, which is connected by the same roof and is part of the entire structure. The walkway faces the Iao Valley direction. The residence has a driveway leading from Mokuhau Road, to the residence. There are several other separate dwellings located on the same premises that are not subject to this investigation.

sess, or control any firearm or ammunition therefor....

The above described structure is believed to be the residence of two male parties known only as "Abe" and "Barney." [4]

After carrying out their search, police officers learned that the name of the first man, known as "Abe," was Avelino Villon, and the name of the second man, known as "Barney," was Bayani Gamit. According to the record, a third person also lived in the dwelling at 2253 Mokuhau Road, named Benito Gamit, who claimed that he was the landlord.

On December 8, 1993, at about 7:55 p.m., approximately nine police officers executed the search warrant by splitting into two teams and entering the dwelling at 2253 Mokuhau Road through the two entrances at the front and side of the dwelling. At a hearing on Anderson's motion to suppress evidence, Police Officer John Kaupulolo (Officer Kaupulolo) recalled that, at the time police officers searched the dwelling at 2253 Mokuhau Road, all the rooms were under a common roof, including Anderson's bedroom, and as one looked at the dwelling at 2253 Mokuhau Road "from the outside it look[ed] as one dwelling."

After entering the dwelling at 2253 Mokuhau Road through the two entrances, police officers came upon a locked bedroom in which they found Anderson. When the police officers announced their presence with the search warrant, Anderson unlocked and opened the bedroom door, and police officers entered the bedroom, where they discovered the contraband. Officer Kaupulolo testified that the contraband recovered from the bedroom included "a small clear plastic ziploc [sic] packet containing white powdery substance believed to be cocaine, homemade aluminum pipe and also a .357 magnum revolver, along with ammunition."

During Anderson's cross-examination of Officer Kaupulolo at the suppression hearing, the following exchange took place:

[Counsel for Anderson]: Did you also talk to the landlord of this dwelling?

[Officer Kaupulolo]: Yes.

[Counsel for Anderson]: That was Benito Gamit?

[Officer Kaupulolo]: Yes, sir.

[Counsel for Anderson]: Did he inform you that William Anderson was renting a room there?

[Officer Kaupulolo]: Yes.

[Counsel for Anderson]: That he had been renting a room for about a year paying $100.00 per month?

[Officer Kaupulolo]: Yes.

However, the record does not indicate exactly when Benito Gamit told Officer Kaupulolo about the landlord-tenant relationship between Anderson and himself. Benito Gamit could have made this statement before, during, or after the police officers' execution of the search warrant.

As stated, the prosecution indicted Anderson for various offenses based on the contraband that police officers seized in Anderson's bedroom. When Anderson subsequently filed his motion to suppress the contraband from evidence, he contended that, because the door to his rented bedroom had been locked at the time of the search and seizure, his bedroom constituted a residential unit that was separate and distinct from the rest of the dwelling at 2253 Mokuhau Road, and, thus, under the fourth amendment to the United States Constitution and article I, section 7 of the Hawai'i Constitution, he had a reasonable expectation of privacy within his bedroom that was beyond the scope of the search warrant that police officers had obtained for the dwelling at 2253 Mokuhau Road. Furthermore, Anderson noted that

---

4. We note that the search warrant permitted police officers to search "within the premises, located at 2253 Mokuhau Road, Wailuku, Maui, Hawaii, Tax Map Key No. 3–4–35–40[,]" which the search warrant described in part "as being a single story wooden/cement structure, having a single carport attached to the waihee side of the residence, structure has a red colored corrugated metal roof, and the structure is a yellow/orange color having light green colored trim." Although the search warrant also stated that "[t]here are several other separate dwellings located on the same premises that are not subject to this investigation[,]" for the sake of brevity we refer to the single story structure that is the express subject of this search warrant as "the dwelling at 2253 Mokuhau Road."

the search warrant did not even name him as a resident of the dwelling to be searched.

After hearing oral arguments regarding Anderson's motion to suppress, the circuit court concluded that the police officers had exceeded the scope of the search warrant by searching the locked bedroom that Anderson allegedly rented from Benito Gamit:

> THE COURT: In my mind there's no question that the search warrant covers the entire house. The problem I find—and there's no question in my mind that if that pouch had been found in the kitchen, then the fact that it was a pouch with a gun in it there's no problem. The problem I have is this was—there may have been an expectation of privacy as defined by the law with regard to this particular room....
>
> ... I'm going to grant the motion to suppress.

Subsequently, the circuit court issued the following findings of facts, conclusions of law, and order:

### FINDINGS OF FACTS

1. On December 8, 1993, at about 7:55 p.m., search warrant SW93–166 was executed on the residence of Avelino Villon and Bayani Gamit at 2253 Mokuhau Road, Wailuku, Maui, Hawaii;

2. In the course of executing the search on the residence, officers came upon the closed and secured door leading to the room of Defendant William Anderson;

3. The police announced they had a warrant and the bedroom door was opened by Defendant;

4. Police then searched Defendant's bedroom and found a 357 revolver within a locked guncase [sic] behind a piece of wood in the wall, a box of cartridges, a clear plastic packet containing white powder, and a brass smoking pipe;

5. Officers also learned from the landlord Benito Gamit, that Defendant Anderson was renting that Bedroom for $100.00 a month for about one year;

### CONCLUSIONS OF LAW

1. The Search Warrant SW93–166 authorized the police to search the entire dwelling of Avelino Villon and Bayani Gamit at 2253 Mokuhau Road;

2. When police officers came upon the closed and secured door of Defendant William Anderson, the evidence shows he had an expectation of privacy. *State v. Woolsey*, 71 Haw. 638, 802 P.2d 478 (1990);

3. The Search Warrant and Affidavit for the Search Warrant did not authorize a search of the premises of Defendant William Anderson, in light of the evidence showing Defendant Anderson had an expectation of privacy. *State v. Woolsey*, 71 Haw. 638, 802 P.2d 478 (1990);

### ORDER

Based upon the foregoing Findings of Facts and Conclusions of Law, the Court hereby orders:

1. All evidence found and seized from the bedroom of Defendant William Anderson, including the 357 revolver, a box of cartridges, a clear plastic packet containing white powder, and a brass smoking pipe, shall be suppressed[.]

In response, the prosecution filed this timely appeal pursuant to HRS § 641–13(7) (1993).

### II. *DISCUSSION*

The prosecution contends that the circuit court erred by suppressing the contraband in the bedroom from evidence, because, in doing so, the circuit court incorrectly concluded, among other things, that "[t]he Search Warrant and Affidavit for the Search Warrant did not authorize a search of the premises of Defendant William Anderson, in light of the evidence showing Defendant Anderson had an expectation of privacy." We agree with the prosecution.

### A. *Standard of Review*

 We review a circuit court's findings of fact in a pretrial ruling according to the following standard:

Appellate review of factual determinations made by the trial court deciding pretrial motions in a criminal case is governed by the clearly erroneous standard. A finding of fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made.

*State v. Okumura*, 78 Hawai'i 383, 392, 894 P.2d 80, 89 (1995) (citations and internal quotation marks omitted). "The circuit court's conclusions of law are reviewed under the right/wrong standard." *State v. Pattioay*, 78 Hawai'i 455, 459, 896 P.2d 911, 915 (1995) (citation omitted). Furthermore,

in a case such as the one at bar, *the proponent of a motion to suppress has the burden of establishing* not only that the evidence sought to be excluded was unlawfully secured, but also, *that his [or her] own Fourth Amendment rights were violated by the search and seizure sought to be challenged.*

*State v. Abordo*, 61 Haw. 117, 120–21, 596 P.2d 773, 775 (1979) (citation and footnote omitted) (emphases added). The proponent of the motion to suppress must satisfy this "burden of proof *by a preponderance of the evidence* [.]" *Pattioay*, 78 Hawai'i at 466, 896 P.2d at 922 (emphasis added) (citation omitted).

B. *The Constitutional Validity of the Search Warrant*

■ We initially address whether the issuance of the search warrant was valid. Even assuming, arguendo, that Anderson had a reasonable expectation of privacy from the other occupants of the dwelling at 2253 Mokuhau Road while he was in the bedroom, the warrant that police officers utilized to search the bedroom was constitutionally valid at the time of its issuance.

■ The fourth amendment to the United States Constitution and article I, section 7 of the Hawai'i Constitution protect persons against unreasonable searches and seizures by government entities.

The freedom of individuals from unreasonable searches and seizures is a fundamental guarantee provided for by the Fourth Amendment to the United States Constitution and Article I, Section [7] of the Constitution of the State of Hawaii. To effectuate the Fourth Amendment guarantee, the United States Supreme Court has conferred upon defendants in both state and federal criminal prosecutions the right to have excluded from trial evidence which has been obtained by means of an unlawful search and seizure. Similarly, this court has held that the same protection is accorded by our own state constitution.

The ability of a defendant to benefit from the protection of the so-called exclusionary rule is, however, not without limitation. The United States Supreme Court has indicated that the rights assured by the Fourth Amendment are personal rights, and that they may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure. Hence, in a case such as the one at bar, the proponent of a motion to suppress has the burden of establishing not only that the evidence sought to be excluded was unlawfully secured, but also, that his [or her] own Fourth Amendment rights were violated by the search and seizure sought to be challenged.

*Abordo*, 61 Haw. at 120–21, 596 P.2d at 775 (citations, internal quotation marks, and footnote omitted).

Under the safeguards of the state and federal constitutions, no search warrants shall issue except upon a finding of probable cause supported by oath or affirmation and particularly describing the place to be searched and the persons or things to be seized. The constitutional requirement that the warrant must describe with particularity the place to be searched is to limit the police as to where they can search, for otherwise the constitutional protection against warrantless searches is meaningless.

*State v. Woolsey*, 71 Haw. 638, 640, 802 P.2d 478, 479 (1990) (footnote omitted). Because

each police search might involve unique facts and circumstances, a determination of whether a search warrant complies with constitutional particularity requirements must be made "on a case-by-case basis, taking into account all of the surrounding facts and circumstances." *State v. Kealoha*, 62 Haw. 166, 170–71, 613 P.2d 645, 648 (1980) (footnote omitted). "The cornerstone of such a determination is the language of the warrant itself." *State v. Matsunaga*, 82 Hawai'i 162, 167, 920 P.2d 376, 381 (App.) (citing *Kealoha*, 62 Haw. at 171, 613 P.2d at 648) (internal quotation marks and original brackets omitted), *cert. denied*, 82 Hawai'i 360, 922 P.2d 973 (1996). "Also relevant to this decision are the executing officer's prior knowledge as to the place intended to be searched, and the description of the place to be searched appearing in the probable cause affidavit in support of the search warrant." *Matsunaga*, 82 Hawai'i at 167, 920 P.2d at 381 (citations omitted).

The issue of the validity of the search warrant in the instant case arose because Anderson asserted that the dwelling at 2253 Mokuhau Road was a multiple occupancy dwelling.

A search warrant for an apartment house or hotel or other multiple-occupancy building will usually be held invalid if it fails to describe the particular subunit to be searched with sufficient definiteness to preclude a search of one or more subunits indiscriminately. . . .

[However, s]ome courts have recognized a significant exception to the above rule: if the building in question from its outward appearance would be taken to be a single-occupancy structure and neither the affiant nor other investigating officers nor the executing officers knew or had reason to know of the structure's actual multiple-occupancy character until execution of the warrant was under way, then the warrant is not defective for failure to specify a subunit within the named building.

2 Wayne R. LaFave, *Search and Seizure* § 4.5(b), at 526–29 (3d ed. 1996) (footnotes omitted).[5]

For example, in *Woolsey*, police officers obtained a search warrant by submitting an affidavit asserting that a woman named Lori Schmitt was conducting cocaine transactions in her bedroom in a residence located at 3803 Manamana Road, Anahola, Kauai. *Woolsey*, 71 Haw. at 639, 802 P.2d at 478. "The search warrant authorized a search of the entire premises and residence of 3803 Manamana Road in Anahola, Kauai, for cocaine, drug paraphernalia, drug proceeds and records and identification of persons in control of these items." *Id.* at 639, 802 P.2d at 479. However, while executing the search warrant police officers searched the bedroom of a different resident within the same premises, namely Woolsey, where police officers found a nine millimeter semiautomatic pistol, ammunition, marijuana, and marijuana literature. *Id.* at 640, 802 P.2d at 479. Reviewing Woolsey's resulting convictions for various

5. Citing, among other things, the following cases as supporting authority for the proposition that a search warrant is not necessarily defective for failing to specify a subunit within the named building: *United States v. Hinds*, 856 F.2d 438 (1st Cir.1988); *United States v. Kyles*, 40 F.3d 519 (2d Cir.1994), *cert. denied*, — U.S. —, 115 S.Ct. 1419, 131 L.Ed.2d 302 (1995); *United States v. Carrillo–Morales*, 27 F.3d 1054 (5th Cir. 1994), *cert. denied*, Austin v. United States, — U.S. —, 115 S.Ct. 1163, 130 L.Ed.2d 1119 (1995); *United States v. Noel*, 938 F.2d 685 (6th Cir.1991); *United States v. Williams*, 917 F.2d 1088 (8th Cir.1990); *United States v. Ofshe*, 817 F.2d 1508 (11th Cir.1987), *cert. denied*, 484 U.S. 963, 108 S.Ct. 451, 98 L.Ed.2d 391 (1987); *United States v. Gilman*, 684 F.2d 616 (9th Cir.1982); *United States v. Logan*, 998 F.2d 1025 (D.C.Cir. 1993), *cert. denied*, Robinson v. United States, 510 U.S. 1000, 114 S.Ct. 569, 126 L.Ed.2d 469 (1993); *Moore v. State*, 297 Ark. 296, 761 S.W.2d 894 (1988); *People v. McGill*, 187 Colo. 65, 528 P.2d 386 (1974); *State v. Weaver*, 442 So.2d 380 (Fla.Ct.App.1983); *State v. Capps*, 256 Ga. 14, 342 S.E.2d 676 (1986); *People v. Thomas*, 70 Ill.App.3d 459, 26 Ill.Dec. 940, 388 N.E.2d 941 (1979); *Watts v. State*, 434 N.E.2d 891 (Ind.Ct. App.1982); *Delly v. State*, 30 Md.App. 391, 352 A.2d 331 (1976), *cert. denied*, 429 U.S. 833, 97 S.Ct. 96, 50 L.Ed.2d 97 (1976); *Commonwealth v. LaPlante*, 416 Mass. 433, 622 N.E.2d 1357 (1993); *People v. Franks*, 54 Mich.App. 729, 221 N.W.2d 441 (1974); *State v. Hendricks*, 145 N.J.Super. 27, 366 A.2d 999 (App.Div.1976); *State v. Woodard*, 35 N.C.App. 605, 242 S.E.2d 201 (1978); *State v. Maulding*, 29 Or.App. 511, 564 P.2d 729 (1977); *State v. Jenkins*, 275 S.C. 129, 267 S.E.2d 542 (1980); *State v. Chisholm*, 7 Wash.App. 279, 499 P.2d 81 (1972).

offenses, we rejected his claim "that the warrant and the subsequent search were invalid because the search warrant exceeded the permissible scope under the constitution in that, based upon [the] Affiant's statement, the magistrate could only authorize a warrant to search Lori Schmitt's room and not the rest of the residence." *Id.* at 641, 802 P.2d at 479.

The fact that the drug sales were an ongoing operation made it reasonable to believe that drug paraphernalia, proceeds and records existed in the residence. *It is also reasonable to believe that in a residence where all occupants have access to all parts of such residence, drugs may be secreted in any part of the residence.* The constitution does not prohibit all searches but only unreasonable searches. We hold that the authorized search of the residence based on the warrant was reasonable, especially in the absence of any evidence that [defendant Woolsey] was entitled to an expectation of privacy from the other occupants in areas in which the weapons were discovered and seized.

Courts have held that *in "multiple occupancy dwellings" in which several persons or families share common living areas but have separate bedrooms a single warrant authorizing the search of the entire premises is valid and reasonable.*

*Id.* (footnote omitted) (emphases added).

■ However, the facts in the instant case are distinguishable from *Woolsey.* Although Anderson apparently shared the overall dwelling at 2253 Mokuhau Road with other occupants, Anderson's bedroom—unlike Woolsey's—was locked at the time of the search. Nevertheless, a locked bedroom door does not, by itself, automatically elevate the bedroom to the status of a separate residential unit. *United States v. Kyles,* 40 F.3d 519, 524 (2d Cir.1994) (A statement by the defendant's mother, telling police officers "that [the defendant] was the only person with a key to the [bed]room did not, by itself elevate the bedroom to the status of a separate residential unit."), *cert. denied,* —— U.S. ——, 115 S.Ct. 1419, 131 L.Ed.2d 302 (1995); *People v. Siegwarth,* 285 Ill.App.3d 739, 220

Ill.Dec. 965, 968, 674 N.E.2d 508, 511 (1996) ("[T]he mere fact that defendant's bedroom was padlocked ... does not mean that the house in fact contained multiple living units."); *State v. Hymer,* 400 So.2d 637, 639 (La.1981) (holding that a warrant authorizing the search a multiple occupancy dwelling that a defendant shared with his sister and brother-in-law also authorized the search the defendant's locked bedroom, because, among other things, the defendant failed to adduce sufficient "evidence that the room was private or inaccessible to his sister and brother-in-law."). Bedroom door locks are not uncommon in multiple occupancy dwellings or, for that matter, in single occupancy dwellings, and Anderson failed to prove by a preponderance of the evidence that, among other things, he was occupying a bedroom that was secured against access by the other occupants in the dwelling at 2253 Mokuhau Road.

More importantly, however, even assuming, arguendo, that the bedroom was secured against access by the other occupants in the dwelling at 2253 Mokuhau Road, the search warrant was nevertheless valid with respect to the bedroom if the objective facts available to the police officers at the time they obtained the search warrant did not reasonably suggest that the bedroom was a residential unit that was separate and distinct from the remainder of the dwelling at 2253 Mokuhau Road. For example, in an analogous case, although a defendant maintained a second, completely *separate* apartment on a third floor premises that a search warrant incorrectly described as being a single premises, the United States Supreme Court held that the search warrant for a single apartment was validly issued and executed because circumstances were such that police officers "reasonably believed that there was only one apartment on the premises described in [their search] warrant." *Maryland v. Garrison,* 480 U.S. 79, 80, 107 S.Ct. 1013, 1014, 94 L.Ed.2d 72 (1987).

Baltimore police officers obtained and executed a warrant to search the person of Lawrence McWebb and "the premises known as 2036 Park Avenue third floor apartment." When the police applied for

the warrant and when they conducted the search pursuant to the warrant, they reasonably believed that there was only one apartment on the premises described in the warrant. In fact, the third floor was divided into two apartments, one occupied by McWebb and one by respondent Garrison. Before the officers executing the warrant became aware that they were in a separate apartment occupied by respondent, they had discovered the contraband that provided the basis for respondent's conviction for violating Maryland's Controlled Substances Act. The question presented is whether the seizure of that contraband was prohibited by the Fourth Amendment.

*Id.* (footnote omitted).

With respect to the validity of the search warrant's issuance, the *Garrison* court noted that facts discovered after a warrant has been issued cannot retroactively invalidate the warrant:

> With the benefit of hindsight ... we now know that the description of that place was broader than appropriate because it was based on the mistaken belief that there was only one apartment on the third floor of the building at 2036 Park Avenue. The question is whether that factual mistake invalidated a warrant that undoubtedly would have been valid if it had reflected a completely accurate understanding of the building's floor plan.
>
> Plainly, if the officers had known, or even if they should have known, that there were two separate dwelling units on the third floor of 2036 Park Avenue, they would have been obligated to exclude [Garrison]'s apartment from the scope of the requested warrant. But we must judge the constitutionality of their conduct in light of the information available to them at the time they acted. Those items of evidence that emerge after the warrant is issued have no bearing on whether or not a warrant was validly issued. Just as the discovery of contraband cannot validate a warrant invalid when issued, so is

it equally clear that the discovery of facts demonstrating that a valid warrant was unnecessarily broad does not retroactively invalidate the warrant. The validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to discover and to disclose, to the issuing Magistrate. On the basis of that information, we agree with the conclusion of all three Maryland courts that the warrant, insofar as it authorized a search that turned out to be ambiguous in scope, was valid when it issued.

*Id.* at 85–86, 107 S.Ct. at 1017 (footnotes omitted). Likewise, the record in the instant case indicates that, based on the information that the police officers had when they were in the process of obtaining the search warrant for the dwelling at 2253 Mokuhau Road, the search warrant was validly issued.

As in *Garrison*, it is only with the benefit of hindsight that we now know that the search warrant's description of the dwelling at 2253 Mokuhau Road might have been overbroad because it was based on the possibly mistaken belief[6] that there was only one residential unit in the dwelling at 2253 Mokuhau Road. If the police officers had known, or even if they should have known, that there were two separate residential units located within the single dwelling at 2253 Mokuhau Road, then they would have been obligated to exclude Anderson's bedroom from the scope of the requested search warrant. But, like the *Garrison* court, we must judge the constitutionality of the search warrant in light of the information available to the police officers at the time the search warrant was issued. Information that emerges only after the search warrant has already been issued, such as the information showing that the bedroom was a separate residential unit that was completely secured against access by the other occupants of the multiple occupancy dwelling, does not retroactively invalidate the search warrant. The validity of the search warrant must be assessed on the basis of the information that the police officers disclosed, or had a duty to discover and disclose, at the

---

**6.** For the purpose of this portion of our analysis, we assume, arguendo, that Anderson could prove that he had a reasonable expectation of privacy in the bedroom from the other occupants of the dwelling at 2253 Mokuhau Road.

time when they requested the search warrant from the district court judge.

As we stated in *State v. Davenport*, 55 Haw. 90, 100, 516 P.2d 65, 72 (1973), "[i]n view of the easy mobility of ... contraband [such as illegal drugs], a warrant specifying the particular premises within which it is hidden is sufficiently detailed to satisfy the constitutional requirement that a warrant particularly describe the place to be searched." (Citations, internal quotation marks, and original brackets omitted.) In Officer Kronoski's supporting affidavit for the search warrant, he referred to the dwelling at 2253 Mokuhau Road as a single residence with a single street address number. According to Officer Kaupulolo, all the rooms in the dwelling at 2253 Mokuhau Road, including Anderson's alleged bedroom, were under a common roof, and as one looked at the dwelling at 2253 Mokuhau Road "from the outside it look[ed] as [though it was] one dwelling." The record shows unequivocally that Anderson's bedroom had neither its own access to the outside nor its own separate street address. At the suppression hearing, Anderson failed to offer any evidence showing that his bedroom had its own mail box, telephone number, kitchen or plumbing fixtures, its own doorbell, or its own bathroom facility, which might have otherwise indicated at the time the search warrant was issued that Anderson's bedroom was a separate residential unit.

Viewed as a whole, the objective facts available to the police officers at the time they obtained the search warrant suggested *no* obvious distinction between Anderson's bedroom and the remainder of the dwelling at 2253 Mokuhau Road that should have made police officers recognize that Anderson's bedroom was a separate residential unit that was completely secured against access by the other occupants in the dwelling at 2253 Mokuhau Road. As in *Garrison*, the search warrant in the instant case did not lack sufficient particularity at the time that it was issued, and, thus, even if Anderson could prove that he had a reasonable expectation of privacy from the other occupants of the dwelling at 2253 Mokuhau Road while he was

inside the bedroom, we hold that the search warrant was validly issued.

### C. *Execution of the Search Warrant*

■ Anderson failed to prove by a preponderance of the evidence that the police officers executed the validly issued search warrant in an unconstitutional manner. For this reason, it was "wrong" for the circuit court to conclude that "[t]he Search Warrant and Affidavit for the Search Warrant did not authorize a search of the premises of Defendant William Anderson, in light of the evidence showing Defendant Anderson had an expectation of privacy."

"When assessing the objective reasonableness of officers executing a [search] warrant, we must look to the totality of the circumstances[.]" *United States v. Johnson*, 78 F.3d 1258, 1263 (8th Cir.1996) (citations and internal quotation marks omitted), *cert. denied*, —— U.S. ——, 117 S.Ct. 227, 136 L.Ed.2d 159 (1996). Although police officers possess a validly issued search warrant, they are generally obligated to limit their search within the scope of the warrant.

It is well-established that once police officers have obtained a search warrant based on probable cause, their authority to search is limited to the place described in the warrant and does not include additional or different places. A search of a [separate] place not described in a search warrant amounts to a warrantless search and is unlawful.

*Matsunaga*, 82 Hawai'i at 167, 920 P.2d at 381 (citations, internal quotation marks, and original brackets omitted).

Thus, where police officers sought gambling records in a multiple office building and "the language of [their search] warrant authorized only a search of Room 201 of the [b]uilding[,]" the *Matsunaga* court recognized that "police were prohibited from searching Room 207 unless Room 207 was found to be part of the premises of Room 201." *Id.* at 168, 920 P.2d at 382. Police officers had searched and seized evidence in Room 207, and, because the record showed Room 207 was not part of the premises of Room 201, the *Matsunaga* court affirmed the circuit court's finding "that there was no

connection, proximity, or affinity between the two rooms, and that Room 201 was physically separated from Room 207 by a hallway, a janitor's closet, rest rooms, and Rooms 203, 204, 205, and 206." *Id.* Accordingly, "the officers here could not have had a good-faith belief that Room 207 was included within the scope of the search warrant." *Id.* at 169, 920 P.2d at 383. Under these particular circumstances, "the objective facts suggest[ed] that the police were aware, before they conducted their search, that there was a distinction between Rooms 201 and 207." *Id.* Thus, the *Matsunaga* court affirmed the circuit court's order suppressing the evidence that police officers had seized during their unconstitutional search of Room 207. *Id.* at 170, 920 P.2d at 384.

"However, areas adjacent to a place described in a warrant, that are under a suspect's exclusive management, control, and domain may at times be deemed part of the premises described in a warrant." *Id.* at 167, 920 P.2d at 381 (citations, internal quotation marks, and original brackets omitted). Furthermore, it is not always unconstitutional for police officers to exceed the scope of a search warrant. Whenever police officers exceed the scope of a search warrant for a single building or single dwelling by searching separate subunits within it, the pivotal issue is whether, under the totality of circumstances, the police officers' failure to realize the overbreadth of the search warrant was objectively understandable and reasonable. For example, it is not unconstitutional for police officers to inadvertently exceed the scope of a warrant to search a single-family house by searching a separate residential unit within the house under the following conditions:

(I) the multiple-occupancy character of the building was not known and could not have been discovered by reasonable investigation; (ii) the discovery of the multiple occupancy occurred only after the police had proceeded so far that withdrawal would jeopardize the search; and (iii) upon discovery of the multiple occupancy, reasonable efforts were made to determine which subunit is most likely connected with the criminality under investigation and to confine the search accordingly.

2 Wayne R. LaFave, *Search and Seizure* § 4.5(b), at 531 (3d ed. 1996).

The *Garrison* court held that police officers validly executed their search warrant even though the search included an unanticipated separate subunit within the intended premises, namely, Garrison's apartment within the third floor premises:

*[T]he validity of the search of [Garrison]'s apartment pursuant to a warrant authorizing the search of the entire third floor depends on whether the officers' failure to realize the overbreadth of the warrant was objectively understandable and reasonable.* Here it unquestionably was. The objective facts available to the officers at the time suggested no distinction between McWebb's apartment and the third floor premises.

For that reason, the officers properly responded to the command contained in a valid warrant even if the warrant is interpreted as authorizing a search limited to McWebb's apartment rather than the entire third floor. Prior to the officers' discovery of the factual mistake, they perceived McWebb's apartment and the third floor premises as one and the same; therefore, their execution of the warrant reasonably included the entire third floor. Under either interpretation of the warrant, the officers' conduct was consistent with a reasonable effort to ascertain and identify the place intended to be searched within the meaning of the Fourth Amendment.

*Garrison*, 480 U.S. at 88–89, 107 S.Ct. at 1018–19 (emphasis added) (citation and footnotes omitted).

The instant case is similar to *Garrison* because the police officers in the instant case originally perceived Anderson's bedroom and the remainder of the dwelling at 2253 Mokuhau Road as one and the same premises. Therefore, absent objectively verifiable facts reasonably showing that the bedroom was a separate residential unit "[p]rior to the [police] officers' discovery of the factual mistake," *id.* at 88, 107 S.Ct. at 1018, the police officers reasonably and understandably included the entire dwelling at 2253 Mokuhau

Road in their search, including Anderson's alleged bedroom.

Although the factual scenario in *Garrison* did not involve a locked bedroom, in another case more closely on point, where police officers discovered marijuana within a defendant's locked bedroom while they were executing a search warrant for "201 SOUTH GRAND, MONROE, L.A., ... a large white wood frame house with a gray roof[,]" the Supreme Court of Louisiana specifically rejected the "[d]efendant['s] conten[tion] that the door to his [bed]room, being locked, put the executing officers on notice that this [bed]room was actually a 'sub-unit' or an 'apartment' and the search warrant for the residence did not authorize a search of such 'sub-unit' or 'apartment.'" *Hymer*, 400 So.2d at 638. The defendant shared the multiple occupancy dwelling with his sister and brother-in-law, and, although the defendant had secured his bedroom against access by having locked the bedroom door, the *Hymer* court vacated a motion court's order suppressing the marijuana from evidence and held that the "[defendant]'s [bed]room was a part of the premises and there was probable cause to search the described premises including the [bed]room in question." *Id.* at 639. Even though though a police officer conceded that the defendant's bedroom "was locked[,]" *id.* at 638, the *Hymer* court concluded that

> there is no evidence in the record that [the defendant]'s [bed]room constituted a separate "sub-unit" or "apartment" so as to require a particular description. Defendant did not testify and called no witnesses at the hearing. ***There is no evidence that the [bed]room was private or inaccessible*** to his sister and brother-in-law. There is no proof that [the defendant] paid any rent for the use of the [bed]room.
>
> The proof only reflects that [the defendant, his sister, and his brother-in-law] occupied the premises to be searched. The search of the bedroom occupied by [the defendant] was clearly authorized by the search warrant.

*Id.* at 639 (emphasis added).

Likewise, in the instant case, the lock on Anderson's bedroom door did not, by itself,

automatically elevate his bedroom to the status of a separate residential unit. As the movant, Anderson bore the burden of proving by a preponderance of the evidence that, based on the totality of the circumstances, the objectively verifiable facts available to the police officers prior to the search of Anderson's bedroom suggested that the bedroom was a separate residential unit that was obviously distinct from the remainder of the multiple occupancy dwelling at 2253 Mokuhau Road, i.e., that the bedroom was obviously "secured against access by the other occupants" of the multiple occupancy dwelling, *Woolsey*, 71 Haw. at 641, 802 P.2d at 479 (citation and internal quotation marks omitted), and that Anderson "had sole and exclusive control over his bedroom[.]" *State v. Alexander*, 41 Wash.App. 152, 704 P.2d 618, 621 (1985); *State v. Woodard*, 35 N.C.App. 605, 242 S.E.2d 201, 205 (1978). Bedroom door locks are not uncommon in any type of dwelling, including a single-family dwelling. Like the defendant in *Hymer*, Anderson neither testified nor called any witnesses at the suppression hearing. Anderson failed to adduce objectively verifiable evidence showing that police officers reasonably should have recognized that the bedroom was completely inaccessible to the other occupants of 2253 Mokuhau Road and that Anderson had sole and exclusive control over the bedroom.

In contrast to *Garrison* and *Hymer*, however, the instant case also involved the allegation that Benito Gamit told police officers that Anderson was renting the bedroom from him. At Anderson's suppression hearing, Officer Kaupulolo acknowledged during his cross-examination testimony that Benito Gamit told Officer Kaupulolo that Anderson had been renting a room from him for about one year at the rate of about $100.00 per month. Consequently, the circuit court stated in findings of fact number 5 that "[o]fficers ... learned from the landlord Benito Gamit, that Defendant Anderson was renting that Bedroom for $100.00 a month for about one year[.]" However, neither the record nor finding of fact number 5 indicates exactly *when* Benito Gamit made this statement about the landlord-tenant relationship to Officer Kaupulolo; Benito Gamit could have

made the statement before, during, or after the police officers' search of Anderson's bedroom. As stated, the validity of the police officers' execution of the search warrant with respect to Anderson's bedroom "depends on whether the [police] officers' failure to realize the overbreadth of the warrant was objectively understandable and reasonable." *Garrison*, 480 U.S. at 88, 107 S.Ct. at 1018. If the police officers did not learn that the bedroom was a separate residential unit until after they already began to search it, then obviously the police officers' failure to realize the overbreadth of the warrant was objectively understandable and reasonable.

Moreover, even if Benito Gamit told police officers that Anderson was renting the bedroom from him before police officers began to search it, Benito Gamit's statement, in and of itself, did not constitute objectively verifiable evidence from which police officers should have unequivocally recognized that the bedroom was a separate residential unit for which they were constitutionally required to obtain a separate search warrant. For example, the United States Court of Appeals for the Second Circuit held that Federal Bureau of Investigation (FBI) agents validly executed a warrant to search the home of a robbery suspect, Basil, at "11–A Malcom Court," despite the fact that the FBI agents eventually forced open the locked bedroom door of Basil's brother, Geoffrey, even after their mother, "Mrs. Kyles[,] told the agents that the door led to Geoffrey's bedroom, and that only Geoffrey had the key." *Kyles*, 40 F.3d at 522. Noting that the "[f]actors that indicate a separate residence include *separate access* from the outside, *separate doorbells,* and *separate mailboxes* [,]" the *Kyles* court specifically rejected Geoffrey's contention "that the warrant did not authorize the agents to search his bedroom because they knew that it was a separate residence." *Id.* at 524 (emphasis added) (citations omitted).

This argument is unconvincing. The FBI agents had no reason to believe that Geoffrey's room was a separate residence: it had neither its own access from the outside, its own doorbell, nor its own mailbox. *Mrs. Kyles's statement that Geoffrey was the only person with a key to the room did not, by itself, elevate the bedroom to the status of a separate residential unit.* Because the bedroom was not a separate residence, the agents had probable cause to believe that the room contained evidence of the bank robbery.

Accordingly, the agents were authorized to break the lock and search the room, and the district judge properly admitted the evidence found inside.

*Id.* (emphasis added); *see also Siegwarth,* 220 Ill.Dec. at 968, 674 N.E.2d at 511 ("[T]he mere fact that defendant's bedroom was padlocked and [his daughter] told the police [during their execution of the search warrant] that the [bed]room was her father's does not mean that the house in fact contained multiple living units.").

Likewise in the instant case, police officers did not have objectively verifiable reasons to believe that the bedroom was Anderson's separate residential unit; the bedroom had neither its own access from the outside, its own doorbell, nor its own mailbox. The dwelling at 2253 Mokuhau Road appeared to be a single residence with a single street address number, and all the rooms, including the bedroom in question, were under a common roof. At the suppression hearing Anderson failed to adduce any objectively verifiable evidence showing that the bedroom was *obviously* a separate residential unit. Like Mrs. Kyles statement in *Kyles,* Benito Gamit's statement that Anderson was renting the bedroom did not, by itself, elevate the bedroom to the status of a separate residential unit. Benito Gamit's bold assertion, without more, was simply not enough.

The police officers were under no duty to automatically accept Benito Gamit's statement as truthful in light of the facts known to them prior to their search. *See, e.g., United States v. Ayers,* 924 F.2d 1468, 1480 (9th Cir.1991) (holding that, where police officers had probable cause to search a multiple occupancy dwelling, but the mother of the person named in the search warrant told police officers that her son no longer lived with her and her husband, "[t]he officers had no duty to accept [the mother's] statements as truthful in light of the facts known to them prior to their search"). Because of

suspected criminal activity on the part of two occupants, the police officers already had probable cause and a warrant to search the dwelling at 2253 Mokuhau Road. In light of these circumstances, when an unknown co-occupant of the same dwelling, Benito Gamit, claimed to be Anderson's landlord, the police officers had no way of knowing at that moment whether Benito Gamit was telling the truth.

More importantly, even assuming that Benito Gamit's statement about the existence of a landlord-tenant relationship was true, the objectively verifiable facts available to the police officers did not obviously indicate that the bedroom was completely inaccessible to the other occupants at 2253 Mokuhau Road, and, thus, it was reasonable for police officers to believe that the bedroom was available to the other occupants as a potential cache for contraband. We have held that a search warrant specifying the premises in which illegal drugs could be hidden "gives the officers executing it authority to search, in a reasonable manner, whatever spots within the described premises their professional experience indicates may be used as a cache." *Davenport,* 55 Haw. at 100, 516 P.2d at 72 (citation omitted). "[I]n 'multiple occupancy dwellings' in which several persons or families share common living areas but have separate bedrooms a single warrant authorizing the search of the entire premises is valid and reasonable." *Woolsey,* 71 Haw. at 641, 802 P.2d at 479. Where police officers obtain a valid warrant to search an apparently single dwelling, such as the dwelling at 2253 Mokuhau Road,

> ***and there are no external signs that its status has been changed,*** the lessee is not multiple and ***it would be unrealistic to require the police to ascertain whether the lessee is subletting, to whom, and who occupies what portion of the house.*** This is analogous to requiring the enforcement officers to determine if a daughter or son pays rent while residing in the same house as their parents and if their use of the house is restricted.

*Jackson v. State,* 129 Ga.App. 901, 201 S.E.2d 816, 819 (1973) (emphases added).

The objective here being a search, the constitution mandates that police conduct in executing a search warrant must be ***reasonable.*** For, it is well-settled that a lawfully issued warrant to search premises extends to the officers executing it the authority to search, in a ***reasonable*** manner. The standards by which any governmental search is to be judged is always its ***reasonableness,*** in light of the constitutional guarantee of freedom from unreasonable searches and seizures.

*State v. Garcia,* 77 Hawai'i 461, 467, 887 P.2d 671, 677 (App.1995) (emphases added) (citations, internal quotation marks, and original brackets omitted).

If, *prior* to commencing their search of Anderson's bedroom, the police officers had discovered objectively verifiable facts reasonably showing that the bedroom was actually a separate residential unit that was inaccessible to the other occupants in the dwelling at 2253 Mokuhau Road, then the police officers' failure to realize the overbreadth of the search warrant would not have been objectively understandable and reasonable, and, thus, the police officers would have violated the constitutional protection against unreasonable government searches under the fourth amendment to the United States Constitution and article I, section 7 of the Hawai'i Constitution. However, Anderson failed to prove by a preponderance of the evidence that the police officers' failure to realize the overbreadth, if any, of their search warrant was not objectively understandable and reasonable.

The police officers had probable cause to believe that Anderson's bedroom contained the contraband that they specifically sought through their valid warrant to search the dwelling at 2253 Mokuhau Road, and, based on the totality of circumstances, we hold that the police officers' failure to realize the overbreadth, if any, of their search warrant was objectively understandable and reasonable. Accordingly, we hold it was "wrong" for the circuit court to issue a conclusion of law that "[t]he Search Warrant and Affidavit for the Search Warrant did not authorize a search of the premises of Defendant William Anderson, in light of the evidence showing

Defendant Anderson had an expectation of privacy."

### III. *CONCLUSION*

For the foregoing reasons, we hold that Anderson failed to sustain his burden of proving by a preponderance of the evidence that either the issuance or the execution of the search warrant was constitutionally invalid. Therefore, we vacate the circuit court's suppression order and remand this case for further proceedings.